COMMERCIAL UNION TELEGRAPH COMPANY *v.* THE NEW ENGLAND TELEPHONE AND TELE-GRAPH COMPANY.

*Telephone Companies. Common Carriers. Patents.*

1. Telephone companies are so far common carriers in their relation to the public that they must serve all the members thereof alike in the transmission of messages.

2. When the proprietor of a patent leases it for a public use, he cannot restrict that use to a portion of the public.

3. Defendant was a telephone and relator a telegraph company, both doing a general business in this State, and having offices in the village of Rutland. Defendant operated under license from the Am. Bell Telephone Company, by the terms of which it was restricted from connecting with the office of a telegraph company without the consent of the licensor. With such consent it had connected with the office of the W. U. Tel3. Co., another telegraph company, in the village of Rutland. *Held*, that the restriction was void, and that the defendant must connect with the office of the relator.

This was a petition for mandamus. The defendant made answer, and the case was heard upon the petition, answer, and agreed statement of facts. The points in issue appear in the opinion.

*Wilson & Hall*, for the relator.

The defendant having established itself in general business in the State has become a public servant. As such it cannot discriminate between different classes of business, or between different persons in the same class. *Baltimore & Ohio Telg. Co.* v. *Bell Telph. Co.*, 24 Am. Law Reg. 573 ; *Bell Telph. Co. of Phila.* v. *The Com. Penn., ex rel. The Balt. & Ohio Telg. Co.*, 7 East Rep. 672 ; *The People ex rel. The Postal Cable Telg. Co.* v. *Hudson River Telph. Co.*, 19 Abb. New Cases, 466 ; *Shepherd* v. *Milwaukee*, 6 Wis. 547; *People ex rel. Kennedy* v. *Manhattan Gas Co.*, 45 Barb. 136 ; *Southern Express* v. *Memphis R. R. Co.*, 8 Fed. Rep. 799 ; *Samuels et*

(16)

*al.* v. *Louisville & N. R. Co.*, 31 Fed. Rep. 57, 18 Fed. Rep. 567; *Sanford* v. *Railroad,* 24 Penn. St. Rep, 378; *New England* v. *Maine Central,* 57 Maine 188–194, 5; *Atwater* v. *Delaware & Lackawanna R. R.,* reported in 4 East Rep. 186; *Friedman* v. *The Gold and Stock Telg. Co.,* 32 Hun. 4; *Public Grain and Stock Exchange* v. *W. U. Tely. Co.,* 16 Fed. Rep. 289; *N. E. Express Co.* v. *M. C. R. R. Co.,* 57 Me. 188, 196.

And the Am. Bell Telephone Company can no more effect this through the ingenious conception of this lease, than the defendant could directly.

Mandamus is the proper remedy.

See cases cited above; High Ex. Rem. ss. 142, 143; *in re White River Bank,* 23 Vt. 478.

*Wales & Wales,* for the defendant.

The American Bell Telephone Company was the absolute owner of this patent. It had a right to use it in whatever way, and within whatsoever limits, and for the benefit of whatsoever persons it saw fit, and it could delegate this right to any other person. S. 4884 Revised Statutes of the U. S. *Gayler et al.* v. *Wilder,* 51 U. S. (10 How.) 478; *Adams* v. *Burks,* 84 U. S. (17 Wall.) 453; *Adams* v. *Burks,* 4 Fish. 392; *Dorsey R. H. Rake Co.* v. *Bradley Manufacturing Co.,* 12 Blatch. 202; *Mitchell* v. *Hawley,* 83 U. S. (16 Wall.) 544; *Wicke* v. *Kleinknecht,* 7 Official Gazette, U. S. Pat. Office, 1098; *Gamewell Fire Alarm Telg. Co.* v. *Brooklyn,* 14 Fed. Rep. 255; *Pope Mfg. Co.* v. *Owsley,* 27 Fed. Rep. 100.

That company gave to this defendant certain rights in the use of its patent, and this defendant has no other or greater right than it so derived. The right in question was expressly reserved by the Bell Co. This defendant cannot therefore lawfully exercise it. *Brooks* v. *Byam,* 2 Story 525; *Am. Rapid Telg. Co.* v. *Conn. Telph. Co.,* 49 Conn. 352; *Missouri* v. *Bell Telph. Co.,* 23 Fed. Rep. 539; High's Ex. Legal Rem., ss. 9 and 10; *Jencks* v. *Coleman,* 2 Sumner 221; *Barney* v. *O. B.*

& *H. Steamboat Co.,* 67 N. Y. 301; *The D. R. Martin,* 11 Blatch. 233.

The opinion of the court was delivered by

TYLER, J. This case was heard on the bill, answer and an agreed statement of facts.

The relator and the defendant are corporations chartered and existing under the laws of the State of New York. The former as a telegraph company since January, 1887, and the latter as a telephone company since January, 1886, have been doing business in this State in compliance with its laws, with offices in the town of Rutland. The defendant, for certain fixed and uniform prices, had placed its telephones in public and private buildings and places of business in said town and connected them with its central office. It had also connected the Western Union Telegraph Company with its central office, so that the latter company and its patrons, at the date of this petition, enjoyed all the privileges and profits to be derived from such connection. In February, 1888, the relator requested the defendant to place a telephone in its office in Rutland and connect the same with its central office and to grant to the relator and its patrons the privileges accorded to others, tendered to the defendant payment for such use and service and offered to comply with all reasonable rules and regulations of the defendant company. The latter refused this request for the reasons stated in its answer and specifically set forth in the exhibits "A" and "B," except on the conditions mentioned in exhibit "B."

The defendant is the licensee by contract "A" of the American Bell Telephone Company, a corporation created by and existing under the laws of Massachusetts. It is provided in said contract that no office or line of the defendant can be connected with any telegraph wire except by lines of the licensor or parties specially designated by it for this purpose, and that no telegraph company, unless specially permitted by the licensor, can be a subscriber of the defendant and so entitled to the use of its telephone; that the licensor in and by said contract reserved to

itself the exclusive right to build and to have built all lines connecting the various offices of the defendant with telegraph offices and the right to operate such connecting lines, and further reserved the title and ownership of all lines which should be built connecting the offices of said company with telegraph offices.

The contract further provides that in case of violation by the defendant of any of its terms and conditions, such violation shall, in the election of the licensor, after certain prescribed notice, work a forfeiture of all its rights under the contract and subject the defendant to other serious loss and damage. The defendant claims in the answer that it is legally prevented and restrained from connecting any of its offices with any telegraph company's office and from allowing any telegraph company to become one of its subscribers except by and with the special permission of the American Bell Telephone Company, its licensor, and that such permission in this case has not been given.

Said exhibit "B" contains the restriction that, "They are not to be used for any toll or consideration to be paid by any person, other than the subscriber, nor for furnishing any part of the work of collecting, transmitting or delivering any message in respect of which any toll or consideration has been or is to be paid to any party other than the Exchange, nor for transmitting market quotations or news for sale, publication or distribution, nor for calling messengers except from the central office, nor for performing any other service in competition with service which the exchange may undertake to perform."

The W. U. Telg. Co.'s office in Rutland, by an arrangement with the respondent and the Am. Bell Telph. Co., is furnished with a telephone and connected with the Central Telephone and connecting lines, for the purpose of transmitting and delivering telegraph messages from the subscribers and other customers of the exchange at Rutland, to the W. U. Telg. Co., and transmitting messages from the latter company to such subscribers and customers for the consideration of two cents for each message so delivered by telephone. The W. U. Telg. Co. pays the respondent two cents for each message, and the Am. Bell

Telph. Co. 15 per cent. on all the tolls received for, transmitting such messages over the lines of said W. U. Telg. Co., of which 15 per cent. the respondent is to receive 50 per cent.

The relator claims that the defendant, having come into this State and established a telephone system under our laws, erected its lines and a central office in Rutland, has become a public servant, a common carrier of speech for hire, and is bound to serve all persons and corporations alike upon their tender of equal pay for equal service and a compliance with the defendant's rules and regulations. On the other hand, the defendant claims that its powers are restricted by the terms of its license ; that its licensor, being the exclusive owner of its patents and property, had a right to grant to the defendant such limited use thereof as it pleased. The question here presented is not a new one. Counsel for the respective parties have, with great diligence and fairness, brought together in their briefs all the decided cases in this country that can throw light on the subject.

The principle contended for by the relator has frequently been applied to railroads and other carriers of persons and freight. It was held in *Bennett* v. *Dutton*, 10 N. H. 481, that the proprietors of a stage coach, who hold themselves out as common carriers of passengers, are bound to receive all who require a passage, so long as they have room and there is no legal excuse for a refusal, and it is not a lawful excuse that they run their coach in connection with another coach which extends the line to a certain place, and have agreed with the proprietor of such other coach not to receive passengers who come from that place on certain days, unless they come in his coach.

In the case of *New Eng. Exp. Co.* v. *Maine Cent. R. R. Co.*, 57 Maine, 188, the defendant let to the Eastern Express Company, for four years, the exclusive use of a certain separate apartment in a car attached to each of its passenger trains, for the purpose of transporting the express company's messenger and merchandise, and agreed that it would not, during the continuance of such contract, let any space in any car on its passenger trains to any other express carrier, and the

defendant, before the expiration of such contract, but after reasonable notice, refused to receive, upon any terms, from the New England Express Company such packages as are usually carried by express companies to be transported by its passenger trains. It was held that "common carriers are, bound to carry indifferently, within the usual range of their business, for a reasonable compensation, all freight offered and all passengers who may apply. For similar equal services they are entitled to the same compensation. All applying have an equal right to be transported or to have their freight transported, in the order of their application." * * * "The very definition of a common carrier excludes the idea of the right to grant monopolies or to give special and unequal preferences. It implies indifference as to whom they may serve, and an equal readiness to serve all who may apply. * * * They cannot, having the means of transporting all, select from those who may apply, some whom they will, and reject others whom they can, but will not, carry. They cannot rightfully confer a monopoly upon individuals or corporations." See also *Sanford* v. *R. R. Co.*, 24 Penn. St. Rep. 378.

In the case of *Southern Exp. Co.* v. *Memphis, etc. R. R. Co.* 8 Fed. Rep. 799, the complainant, an express company, had been for many years engaged in carrying on an express business over the defendant's railroad. No written contract was ever entered into between the parties, but the business was carried on without objection and upon terms mutually satisfactory until some time in the year 1880, when the defendant asserted its own right to transact all the express business upon its line and attempted to eject the complainant therefrom. Upon the application of complainant a temporary injunction was granted, and upon a motion to dissolve the same McCrary, J., said that it was the duty of the defendant, as a public servant, to receive and carry goods for all persons alike, without injurious discrimination as to rates or terms; that railroad companies must carry express packages and the messenger in charge of them, for all express companies that apply, on the same terms, unless excused by the fact that so many apply it is impossible to accommodate all.

The same was held in *Samuel et al.* v. *Louisville & N. R. R. Co.*, 31 Fed. Rep. 57, where defendant discriminated against one of two rival lines of steamboats by charging it fifty cents a hundred more for freight than the other. Also, where a railroad company has established commutation rates for a particular locality and sold commutation tickets thereat to the public, the refusal of such a ticket to a particular individual under the same circumstances and upon the same conditions as such tickets are sold to the rest of the public, is an unjust discrimination against him and a violation of the principles of equality which the company is bound to observe in the conduct of its business. *Atwater* v. *Del., Lack. & West. R. R. Co.*, 4 East. Rep. 186. In *McCoy* v. *C., I., St. L. & C. R. R. Co.*, 22 Am. Law Reg. 725, it was held that a railroad company was bound to transport over its road and deliver to all stock yards at a certain point reached by its line, all live stock consigned which shippers desired to consign to them, upon equal terms and in like manner, and it cannot bind itself to perform this duty for one to the exclusion of another and competing yard ; and in *Hays* v. *Penn. R. R. Co.*, 22 Am. Law Reg. 39, it was held that a railroad, though owned by a corporation, is, in a qualified sense, a public highway, constructed for public uses, and everybody constituting part of the public, for whose benefit it was authorized, is entitled to an equal and impartial participation in the use of the facilities it is capable of affording. A discrimination in the rates of freight between the same points is unreasonable and unjust.

The same rule has been applied to gas-light companies. Where a citizen has made all necessary preparations to receive and use gas in his store or residence upon the line of a company's pipes, upon his compliance with the reasonable terms and rules of the company the latter is bound to furnish him gas. *Shepard* v. *Milwaukee Gas Light Co.*, 6 Wis. 539; *The People* v. *Manhattan Gas Light Co.*, 45 Barb. 137.

A case more directly in point is that of *Friedman* v. *Gold & Stock Telg. Co.*, 32 Hun. 4, where a suit was brought to restrain the removal of two instruments in plaintiff's place of

business. It was held that the defendant, being a public corporation, could make no distinction in respect to persons who wish to partake of the privileges which it was created to furnish, but owed the duty impartially to grant to all, who complied with its rules, the privileges furnished. See also Smith against the same defendant, 42 Hun. 454, which was a suit brought to restrain the removal of "a ticker," or reporting instrument, maintained and operated by the defendant, and from doing or failing to do any act which would in any way interfere with the receipt by the plaintiff of the quotations of the New York Stock Exchange. The court in commenting upon the obligations of corporations to the public said : " These obligations do not rest on contract, but on the ground that when one is engaged in a business, public in its nature, he must, if public policy requires, serve the public impartially."

The case of *State ex rel. Am. Un. Telg. Co.* v. *Bell Telph. Co. of Mo.,* 22 Albany Law Journal, 363, was an application for *mandamus* to compel the defendant to connect the plaintiff's office with its wires and give it the use of telephonic facilities. The defendant contended that it could not be compelled to do so because by the terms of its license from the patentee of the invention it was forbidden to connect with any telegraph office or permit any telegraph company to become one of its subscribers. Thayer, J., said : " In my judgment this clause of the contract is indefensible when called in question by any person or corporation injuriously affected thereby. In so far as the contract between the respondent and the patentee compels the former to discriminate against one class of its would be customers and to deny them the same privileges and service which it accords to others, the contract is invalid. It is not possible to admit the principle that a railroad, telegraph or telephone company may avoid the performance of any part of the paramount duty they owe to the entire public, by contract obligations which they may enter into, even with the patentee of an invention."

Telegraph Company *v*. Telephone Company.

In *Louisville Transfer Co.* v. *Am. Dist. Telph. Co.*, 24 Albany Law Journal, 283, the plaintiff was a proprietor of public omnibuses and carriages, and the defendant was a telephone company and also proprietor of public carriages. Upon an application by plaintiff for an injunction to restrain the defendant from removing its telephone from the plaintiff's office and from refusing to transact its (plaintiff's) telephone business pursuant to contract, the defendant insisted that a mere rival in one branch of its business could not force it to afford it facilities which it had provided for another branch of its business. The court said : "The real contention between the plaintiff and defendant is confined to their carriage and coupé service, the defendant insisting that as against the plaintiff, a rival in that business, it has the right to a monopoly in the use of its own telephone methods of communicating and receiving orders for coupés ; that a mere rival in one branch of its business cannot force it to afford it the facilities which it has provided for another branch of its business ; * * * that defendant is engaged in two distinct employments—one in operating a telephone exchange, and the other in operating a carriage or coupé service. Plaintiff and defendant are not rivals in the former business, and as to that part of defendant's business, it occupies the same position toward the plaintiff that it does toward the rest of the public ; that defendant is a *quasi* public servant, and as such is bound to serve the general public, including plaintiff, on reasonable terms, with impartiality ; that defendant is governed by the principles of the law of common carrier." In *Chesapeake & Potomac Telph. Co.* v. *B. & O. Telg. Co.*, 66 Md. 399, the court, holding the same view, said : " The telegraph and telephone are important instruments of commerce, and their service as such has become indispensable to the commercial public. They are public vehicles of intelligence, and they who own or control them can no more refuse to perform impartially the functions that they have assumed to discharge than a railway company, as a common carrier, can rightfully refuse to perform its duty to the public. * * * They have no power to discriminate, and while offering readily to serve some, refuse to serve others."

A recent case and one relied upon by the relator's counsel, is that of the *Balt. & O. Telg. Co.* v. *Bell Telph. Co.*, 24 Am. Law. Reg. 573, Circuit Court, E. D. Mo., which arose upon a state of facts nearly identical with those in the case at bar. Brewer, J., in giving the opinion of the court, from which Treat, J., dissented, said : "Now, the question is whether the court can compel this defendant, doing the telephone business of this city, to establish communication with any other individual or company than that permitted by its license from the patentee. I believe fully in the sacredness of property, but.I think all property stands upon an equal basis, whether that property consists of gold dollars in your pocket, real estate, or the ownership of a patent. There is no peculiar sanctity hovering over or attaching to the ownership of a patent. It is simply a property right to be protected as such. Starting from that as a basis, while every property owner may determine for himself to what he will devote his property, yet the moment he puts that property into what I may, for lack of a better expression, define as the channels of commerce, that moment he subjects that property to the laws which control commercial transactions. * * *

" A telephonic system is simply a system for the transmission of intelligence and news. It is, perhaps, in a limited sense, and yet in a strict sense a common carrier. It must be equal in its dealings with all. It may not say to the lawyers of St. Louis, ' my license is to establish a telephonic system open to the docters and the merchants, but shutting out you, gentlemen of the bar.' The moment it establishes a telephonic system here, it is bound to deal equally with all citizens in every department of business, and the moment it opened its telephonic system to one telegraph company, that moment it puts itself in a position where it was bound to open its system to any other telegraph company tendering equal pay for equal service.

" So my conclusion is that, notwithstanding the terms of this license, which seemed to inhibit it from dealing with or giving its telephonic privileges to any other telegraph company than the Western Union, the moment it established its telephonic sys-

tem here, that moment it compelled itself to respond to the demands of any telegraph company or any individual in the city tendering to it equal pay for equal privileges. The application for *mandamus* will be sustained."

The Supreme Court of Nebraska has rendered a similar decision in *State* v. *Neb. Telph. Co.*, reported in 24 Am. Law Reg. 262. The same question was before the Supreme Court of Pennsylvania in *Bell Telph. Co.* v. *Commonwealth of Penn.*, 7 East. R. 672, which contains a full review of the decided cases and in which the same doctrine is held. See also *People ex rel. Postal Telg. Cable Co.* v. *Hudson River Telg. Co.*, 19 Abbott's New Cases, 466, decided in 1887.

The rule of law recognized in the foregoing cases does not in any wise conflict with section 4884 of the Rev. Sts. of the U. S., which in substance provides that every patent shall contain a grant to the patentee, his heirs or assigns, of the exclusive right to make, use and vend the invention or discovery throughout the U. S., nor with the decision of the U. S. Supreme Court in *Gayler et al.* v. *Wilder*, 51 U. S. 478, that the monopoly of making, using and vending an invention or discovery created by this statute is all there is of a patent; that it is the power to exclude others from using the products of his labor without his consent which constitutes the whole property of a patentee. It is true that the owner may divide his right, conveying to one the right to make, to another the right to use and to another the right to vend ; that he may limit the time and the territory within which the subject of his patent may be used. *Adams* v. *Burke*, 84 U. S. 453 ; *Mitchell* v. *Hawley*, 83 U. S. 544 ; *Nicke* v. *Kleinkuecter*, 7 Official Gazette, U. S. Pat. Office, 1098 ; *Gamewell Fire Alarm Telg. Co.* v. *Brooklyn*, 14 Fed. Rep. 255. As to the right of the owner of a patent to limit the purpose for which it may be used, the case of *Pope Mfg. Co.* v. *Owsley*, (Circuit Court N. D. Ill.) 27 Fed. Rep. 100 is in point. There it was held that where a license does not purport to give an unlimited right to the use of the patent, but restricts the right to machines of certain descriptions, when the licensee makes

machines not in conformity to his license, but within the patent, he not only violates his express covenant not to do so, but violates the patent.

These general principles of law are specially applicable to patents and patented articles designed for private use.

The case most relied upon by the defendant is *Am. Rapid Telg. Co.* v. *Conn. Telph. Co.*, 49 Conn. 352, in which the facts are like those in the case at bar. After stating the grounds upon which the application for *mandamus* was claimed, which were the same as in this case, Pardee, J., said: "But the property of the American Bell Telephone Company is absolute and exclusive; it can rent or sell it in whole or in part; it can refuse to make or use, or to allow any one else to make or use, the telephone described in it, or it can make and sell one and no more, and put such restrictions as it pleases upon the time, place and manner of using that; and it was the privilege of the Connecticut Telephone Company to purchase from it even the most limited right to use one or more of its instruments, and it is not within the power of the court either to enlarge or discriminate the purchase." The learned judge reasons that the position of the defendant, which, by its contract with the licensor, has only a limited right to the patent, is unlike that of a railroad company which undertakes to put limitations upon the use of property absolutely its own. But if this is correct reasoning, it follows that the licensor may discriminate between different classes of business men, and indeed between different men of the same class.

Patents are property, and the right to sell or lease them is subject to the same restrictions as other property. The patentee cannot lease them for any use that contravenes principles of public policy. If he leases them for a public rather than an individual use he thereby gives the use to the whole public. In this case the American Bell Telephone Company might have licensed its patent to the defendant so the latter alone could have used it, but when it went beyond this and licensed the defendant to use it for the public it in fact licensed it for all who desired its use and offered compliance with reasonable conditions.

The license, with the restrictive clause therein, cannot be regarded as the measure of the defendant's duty to the public. On grounds of public policy, which controls all public carriers, that clause in the contract in question is held void, so that the license stands precisely as if the restrictive clause were not contained in it.

In the view of the case which we have taken, it seems unnecessary to make the Bell Telephone Company a party to these proceedings.

It is therefore ordered that a peremptory *mandamus* in the usual form issued out of this court under the hand and seal of the clerk thereof to the said defendant, the New England Telephone and Telegraph Company, commanding and requiring it on payment to it by the relator, the Commercial Union Telegraph Company, of its usual and proper charges, and on compliance with its proper rules and regulations, to place one of its telephone instruments, with the usual and proper wires and connections, in the relator's office in Rutland aforesaid, and to connect the same with its central office in said Rutland in such a manner that the relator, its patrons and other persons wishing to transact business with the relator may have the same benefits and privileges to be derived therefrom that are accorded to others who have and use the defendant's telephones.