### T. J. HORTON v. INTERSTATE TELEPHONE AND TELEGRAPH COMPANY.

(Filed 20 April, 1932.)

1. **Telephone Companies A a—Local telephone exchange is subject to control and regulation by Corporation Commission.**

   A local telephone company having an arrangement for the transmission of long distance messages over the lines of another company for pay, and having facilities for knowing which of its customers make long distance calls and for collecting the tolls from them on its own responsibility, etc., is a public-service corporation and comes within the provisions of C. S., 1035(2) giving jurisdiction over it to the Corporation Commission, and such company may not discriminate among its subscribers as to the conditions upon which it will render service to them.

2. **Telephone Companies A d — Rule of telephone company requiring guarantee deposit in certain cases held void under facts of this case.**

   Where a person applies to a local telephone company for service and pays the usual installation fee and complies with the general require-

ments of the company for the installation of such service, and the telephone company, after giving its receipt for the installation charges, demands that the applicant make a deposit in a certain amount as a guarantee for payment of future service, and it appears that the demand for such deposit was made under a rule of the management that the deposit should be required of those considered bad credit risks, and that the rule had never been authorized by the directors of the corporation, and was made without the knowledge or consent of the Corporation Commission, and that it had been enforced against only a few individuals out of the company's many subscribers: *Held*, the rule is an unlawful discrimination among its customers by a public-service corporation, and mandamus will lie to compel the company to install its service without the payment of such deposit.

APPEAL by defendant from *Daniels, J.,* at October-November Term, 1931, of DURHAM. Affirmed.

The judgment of the court below was as follows:

"This cause coming on to be heard and being heard before his Honor, F. A. Daniels, judge presiding, and being heard upon evidence offered in the form of written affidavits and parol testimony during the regular term of Superior Court of Durham County, North Carolina, beginning on 26 October, 1931, and it being agreed upon by counsel for both of the parties to this action that judgment might be entered at a subsequent time by his Honor, Judge F. A. Daniels, while out of the district; now, therefore, upon consideration of the evidence offered and the arguments of counsel, the court finds the following facts:

1. That the plaintiff is a citizen and resident of Durham County, North Carolina, and that the defendant is a corporation duly created, organized and existing under and by virtue of the laws of the State of North Carolina, with its principal office in the city of Durham, North Carolina.

2. That the defendant under the terms of its franchise from the city of Durham owns and operates a telephone company in Durham, North Carolina, and furnishes a telephone service to the public generally in the city of Durham, North Carolina; that the defendant only owns and conducts a local business in the city of Durham and does not own lines and other facilities for long distance telephone messages; and further that the defendant affords its subscribers and patrons long distance telephone facilities under the terms of an agreement which it has with the Southern Bell Telephone Company, and that under the terms of said agreement with the Southern Bell Telephone Company the defendant is obligated and liable for the payment of all long distance calls made by its subscribers. There is no evidence that defendant cannot, by agree-

ment with the Southern Bell Telephone Company, keep itself informed as to the number of long distance calls made by defendant's subscribers.

3. That the defendant requires the payment of a month's rent in advance from all its subscribers which only covers the local service charge and does not include any long distance telephone charges that might be incurred through the use of the long distance telephone service; and that the managers and superintendents of the company follow an established rule of requiring deposits from all persons who have bad credit ratings and/or who are considered financially irresponsible and that said regulation is an established custom of such officers of the company in the management and conduct of its business; and that said deposits range from $15.00 to $25.00, depending upon the nature of the business to be conducted by the applicant, the estimated probable number of long distance telephone calls and the use to be made of the telephone service by the applicant; that this rule has never been formally adopted at a meeting of the stockholders or board of directors of the company, and has never been published, but is an established rule that has been in effect by the management over a long period of time.

4. That T. J. Horton is now a subscriber to the telephone service of the defendant, having a telephone in his residence, and that on two different occasions the telephone service has been temporarily discontinued and on one occasion the telephone instrument removed from the home of said T. J. Horton on account of the failure and refusal of the plaintiff to pay for the telephone service in his home.

5. That in October, 1927, T. J. Horton was the president of Horton Electric Company, a corporation doing business in the city of Durham, North Carolina, and that at his request the telephone was installed in the place of business of the Horton Electric Company on 21 October, 1927, and permitted to remain there until 20 August, 1928, that during said time it became necessary to temporarily discontinue said telephone service three times and on 20 August, 1928, to remove the instrument from said place of business on account of the failure and refusal of the Horton Electric Company to pay for the service received, the amount of the indebtedness owed at that time being $21.05, of which amount local charges amounted to $10.50 and long distance tolls amounted to $10.55.

6. That on 13 October, 1931, the plaintiff made application for the installation of a business telephone to be installed at No. 121 Market Street in the city of Durham, North Carolina, and with his application made a deposit of $9.50 to cover installation charges and local rent for one month in advance; and that the defendant issued to plaintiff its receipt for the same in the following language:

'Account No.. .......... ; Name T. J. Horton Company; Local ........ . .... ; So. Bell . ...... ................. .. ..; Granville .... ....... ... ....... ......; Miscellaneous; Total $9.50.

Paid: 13 October, 1931; Interstate Telephone and Telegraph Company.

The installing charge is not a deposit and will not be refunded. All telephone bills are due and payable monthly in advance, subject to discontinuance without further notice if not paid by the 10th.'

That on the next day the plaintiff was informed by V. O. Isenhour, an agent of the defendant, that the defendant held an unpaid bill of the Horton Electric Company, a corporation of which plaintiff had been president and which had ceased to do business, and that unless he paid the bill of $21.05 due by the said Electric Company he would be required to make a cash deposit of $25.00 before the telephone applied for would be installed; that the plaintiff was not liable for the payment of the said bill and declined to pay the same; that thereupon the defendant explained to the plaintiff that it did not know when the contract was made in 1927, that the Horton Electric Company was a corporation and offered to make the installation of said telephone if he would make the further deposit of $25.00 which the plaintiff declined to make: That the defendant did not refuse to install the telephone because the plaintiff refused to pay the $21.05 but because he would not make the deposit of $25.00 as required by the defendant.

7. That the defendant's officers and agents invoked its rule of requiring a deposit from applicants who have bad credit ratings and/or who are financially irresponsible for the reason that they considered the plaintiff to be financially irresponsible and of a bad credit rating; and that they offered to install a telephone and furnish telephone service to the plaintiff if he would make a deposit of $25.00 as a guarantee of payment for future service in the nature of long distance telephone calls and local service charges; that the plaintiff refused to make said deposit and demanded the installation of a telephone without said deposit.

8. That the plaintiff is indebted to C. H. Mattews Grocery Store and had been so indebted for a period of two years or more; that he is indebted to two clothing stores in the city of Durham, North Carolina, and has been so indebted for a period of two years or more; that he is indebted to a doctor in the city of Durham, North Carolina, for professional services rendered and has been so indebted for a period of two years or more; that there are two unpaid judgments docketed against Mrs. T. J. Horton for groceries used in the home of the plaintiff and for which payment has never been made; that on two different occasions the plaintiff gave worthless checks to Montgomery Ward and Company

and refused to pay the same until after they had been placed in the hands of an attorney for collection; that in four different cases during the year 1928 the plaintiff was indicted and convicted of giving worthless checks which had been drawn by the Horton Electric Company, a corporation, but which was under the management and direction of T. J. Horton personally, and which checks were drawn personally by the said T. J. Horton. That on one occasion the plaintiff vacated a residence after an ejectment proceeding had been instituted against him in the courts of Durham County and service of summons had been made upon him by a proper officer.

9. That the plaintiff does not own any real estate and only lists for taxes personal property valued between $250 and $300.

10. That the plaintiff is financially irresponsible and has a bad credit rating.

11. That the said custom or regulation of the company in requiring a deposit from all persons who have a bad credit rating and/or who are financially irresponsible is never enforced except when applicant is considered financially irresponsible and a bad credit risk. The defendant has about fifty-five hundred subscribers and a deposit of $25.00 has been required of only a few of this number—several individuals. The deposit of $25.00 is refunded when the contract under which it is made is terminated and all amounts due the defendant for its services are paid.

Wherefore, upon the foregoing finding of facts the court is of the opinion that the plaintiff upon payment of the rent in advance for one month and the cost of installing the phone is entitled, as a legal right, to have a phone installed in his place of business and his name published in the phone directory system; and it is therefore ordered, adjudged and decreed:

First: That the defendant, Interstate Telephone and Telegraph Company, be and is hereby directed to install for the use of the plaintiff at his place of business, 121 North Market Street, a telephone of the kind and quality ordinarily placed at the disposition of customers under similar circumstances, and to render him service in connection with the telephone so installed as is customarily rendered to subscribers of the telephone under like conditions.

Second: That the defendant, Interstate Telephone and Telegraph Company, be, and it is hereby further ordered and directed to place plaintiff's name, T. J. Horton Company, in its regular place in the telephone directory which is about to be published.

Third: That the defendant is taxed with the costs of the action."

Defendant excepted and assigned error to the judgment as signed and made other exceptions and assignments of error, and appealed to the Supreme Court. The material ones will be considered in the opinion.

*J. E. Horton and R. O. Everett for plaintiff.*
*Basil M. Watkins for defendant.*

CLARKSON, J. The defendant is a public service corporation. The present action is in its nature a mandamus to compel defendant to perform a duty which plaintiff alleges it owed him as a public service corporation and install a telephone in plaintiff's place of business and place the name *T. J. Horton Company* in defendant's telephone directory. A mandamus is a proper remedy in such cases when the facts warrant. *Godwin v. Telephone Co.,* 136 N. C., 259; *Telephone Co. v. Telephone Co.,* 159 N. C., 16; *Walls v. Strickland,* 174 N. C., 298; *Public Service Co. v. Power Co.,* 179 N. C., 18; *Public Service Co. v. Power Co.,* 180 N. C., 335; *R. R. v. Power Co.,* 180 N. C., 422.

*In re Utilities Co.,* 179 N. C., at p. 159, we find: "The power of the Legislature, either directly or through appropriate governmental agencies, to establish reasonable regulations for public service corporations in matters affecting the public interests is now universally recognized, and the principle has been approved with us in well considered decisions dealing directly with the question," citing numerous authorities.

The General Assembly of North Carolina has placed certain public service corporations and businesses within control of the Corporation Commission, C. S., 1035(2), as follows: "Telegraph and telephone companies and all other companies engaged in the transmission of messages; over persons and individuals owning and operating telegraph or telephone lines in North Carolina and who rent phones and wires to persons generally."

The Corporation Commission is given power to fix rates, etc., for public utilities, C. S., 1066(2), as follows: "The transmission and delivery of messages by any telegraph company, and for the rental of telephone and furnishing telephone communication by any telephone company or corporation."

On 13 October, 1931, "the plaintiff made application for the installation of a business telephone to be installed at No. 121 Market Street in the city of Durham, North Carolina, and with his application made a deposit of $9.50 to cover installation charges and local rent for one month in advance; and that the defendant issued to plaintiff its receipt for the same." The next day after this receipt was given the defendant refused to install the telephone unless a deposit of $25.00 in addition was made by plaintiff. The defendant contending that the Horton Electric Company, a corporation of which plaintiff had been president and which had ceased to do business sometime before, owed it $21.05. Plaintiff contended that he was not liable for the payment of the bill.

The court below found certain facts: "The managers and superintendents of the company follow an established rule of requiring deposits from all persons who have bad credit ratings and/or who are considered financially irresponsible and that said regulation is an established custom of such officers of the company in the management and conduct of its business; and that said deposits range from $15.00 to $25.00, depending upon the nature of the business to be conducted by the applicant, the estimated probable number of long distance telephone calls and the use to be made of the telephone service by the applicant; that this rule has never been formally adopted at a meeting of the stockholders or board of directors of the company, and has never been published, but is an established rule that has been in effect by the management over a long period of time. . . . That the defendant's officers and agents invoked its rule of requiring a deposit from applicants who have bad credit ratings and/or who are financially irresponsible for the reason that they considered the plaintiff to be financially irresponsible and of a bad credit rating; and that they offered to install a telephone and furnish telephone service to the plaintiff if he would make a deposit of $25.00 as a guarantee of payment for future service in the nature of long distance telephone calls and local service charges; that the plaintiff refused to make said deposit and demanded the installation of a telephone without said deposit. . . . That the said custom or regulation of the company in requiring a deposit from all persons who have a bad credit rating and/or who are financially irresponsible is never enforced except when applicant is considered financially irresponsible and a bad credit risk. The defendant has about fifty-five hundred subscribers and a deposit of $25.00 has been required of only a few of this number—several individuals. The deposit of $25.00 is refunded when the contract under which it is made is terminated and all amounts due the defendant for its services are paid."

In *Walls v. Strickland, supra,* at p. 300, this Court speaking to the subject, said: "In *Telegraph Co. v. Telephone Co.,* 61 Vt., 241, 5 L. R. A., 15 Am. St. Rep., 893; *S. c.,* 3 Am. Elec. Cases, at p. 435, it is said: 'A telephonic system is simply for the transmission of intelligence and news. It is, perhaps, in a limited sense, and yet in a strict sense, a common carrier. It must be equal in its dealings with all.' That case cited many authorities, which are, indeed, uniform, that the telephone business, like all other services fixed with public use, must be operated without discrimination, affording (equal rights to all, special privileges to none). 'Telephones are public vehicles of intelligence, and they who own or control them can no more refuse to perform impartially the functions that they have assumed to discharge than a railway company,

as a common carrier, can rightfully refuse to perform its duty to the public,' is said in *Telephone Co. v. Telegraph Co.,* 66 Md., 299, at p. 414, 59 Am. Rep., 167, which is another very instructive and well-reasoned case upon the same subject. Telephone companies are placed by our Corporation Act on the same footing, as to public uses, as railroads and telegraphs.' "

In 37 Cyc. of Law and Proc., at p. 1654, we find: "A telegraph or telephone company cannot arbitrarily refuse to furnish service to a particular customer, if the service demanded be of a character which it holds itself out as prepared to furnish to the public generally, or to the public of the applicant's class. It cannot require an applicant for service to contract not to make use of the facilities offered by a rival company, or not to use a telephone to call messengers from another office, or refuse such services on the ground that the applicant had broken a previous agreement to this effect. It cannot refuse service to a person offering to pay therefor, or require as a condition of furnishing service that such person pay an old debt or settle a disputed claim growing out of a previous transaction, even though of the same kind." *O'Neal v. Citizens Pub. Service Co.,* 157 S. C., 320, 70 A. L. R., 887; *Woodley v. Telephone Co.,* 163 N. C., 284; *Cumberland Tel. etc. Co. v. Hobart,* 89 Miss., 252; see *Southwestern Tel. & Telephone Co. v. Danaher,* 238 U. S., 482.

The present action concerns an intrastate transaction. The facts disclose that "the *managers* and *superintendents* of the company follow an established rule," etc. "This rule has never been formally adopted at a meeting of the stockholders or board of directors of the company and has never been published," etc. Nor does it appear that this rule has ever been given approval by the Corporation Commission, or indeed that it has ever been brought to the attention of the Corporation Commission. Plaintiff paid the usual deposit of $9.50. This controversy involves the $25.00 additional deposit. It may be that the exigencies of the telephone business are such as to require, under certain circumstances, if reasonable and not arbitrary or discriminatory, such a regulation, but as to that the Corporation Commission, under the law perhaps would be the proper agency to determine that fact.

On the present record we think the court below correct in the judgment rendered.

Affirmed.