## HOME OWNERS' LOAN CORPORATION v. LOGAN CITY et al.

No. 6111. Decided July 6, 1939. (92 P. 2d 346.)

236

*Samuel J. Carter* and *C. E. Henderson*, both of Salt Lake City, for appellant.

*Leon Fonnesbeck*, of Logan, for respondents.

WOLFE, Justice.

Plaintiff, Home Owner's Loan Corporation, has appealed from a judgment of the District Court of Cache County dismissing its petition for a writ of mandamus against the defendant Logan City. Appellant sought to compel respondents herein to furnish water to certain dwellings owned by appellant. Logan City refused to so so until certain water bills, incurred by former tenants and owners of the premises had been paid, relying on Section 916A, Revised Ordinances of Logan City 1927. This ordinance reads, in part:

"Water must not be turned on to any premises, until all charges against such premises that are due and payable to the city, on account of any of the following items, have first been paid: (1) Account due for water service received by the same or previous owner, tenant, or occupant of premises."

Appellant urged in the district court, and now urges to this court, that the provisions above quoted are not authorized by statute and therefore the ordinance is invalid. Numerous authorities are cited by appellant to the effect that without express statutory authority a city cannot, after turning off the water supply of a delinquent owner or tenant, refuse to turn it on for a subsequent owner or occupant until all arrears are paid. To this general statement of law respondent city agrees. But it contends (1) that part of the water rents were incurred while plaintiff and appellant was the owner of the premises; and (2) that the ordinance under which the city acted is authorized by Sections 15-7-11 and 15-7-14, R. S. U. 1933, reading as follows:

Section 15-7-11: "In case the owner of any of the premises mentioned in section 15-7-10, or the tenant or occupant, shall fail to pay for water furnished such owner, tenant or occupant, according to such ordinances, rules or regulations enacted or adopted, the city or town may cause the water to be shut off from such premises, and shall not be required to turn the same on again until all arrears for water furnished shall be paid in full."

Section 15-7-14: "Every city and town may enact ordinances, rules and regulations for the management and conduct of the waterworks system owned or controlled by it."

It is clear that Section 15-7-14 confers no express power to pass the ordinance in question. This section is merely a general provision permitting a city to enact ordinances for the management of its waterworks system. It has already been stated that the statute must specifically authorize the ordinance in order that it be considered the purpose of the legislature to confer that power on the city. Therefore, the ordinance must be authorized, if at all, by the provisions of Section 15-7-11, hereinabove set out. The language of this section appears at first to support the contention of respondent city. It reads that the city may cause the water to be shut off "and shall not be required to turn the same on again until all arrears for water furnished shall be paid in full." Nor does it specifically state by whom such arrears are to be paid. It does, however, specify under what conditions the city may cause the water supply to be shut off from premises. Those conditions are fulfilled where "the owner of any of the premises mentioned in Section 15-7-10, or the tenant or occupant," fails to pay for water furnished "such owner, tenant or occupant." We must, therefore, read into Section 15-7-11 the provisions of Section 15-7-10 to determine what "owner" the former section refers to. Section 15-7-10 reads:

"No city or town which is the owner or in control of a system for furnishing water to its inhabitants shall be required to furnish water for use in any house, tenement, apartment, building, place, premises or lot, whether such water is for the use of the owner or tenant, unless the application for water shall be made in writing, signed by such

owner or his duly authorized agent, in which application such owner shall agree that he will pay for all water furnished such house, tenement, apartment, building, place, premises or lot according to the ordinances, rules and regulations enacted or adopted by such city or town. In case an application for furnishing water shall be made by a tenant of the owner, such city or town may require as a condition of granting the same that such application contain an agreement signed by the owner thereof, or his duly authorized agent, to the effect that in consideration of the granting of such application the owner will pay for all water furnished such tenant, or any other occupant of the place named in the application, in case such tenant or occupant shall fail to pay for the same according to the ordinances, rules and regulations enacted or adopted by such city or town."

This section itself provides a way whereby the city may insure, to a great extent, the collection of its water bills. The city need not furnish water for use in any building or on any property, whether for the benefit of the owner of such premises or a tenant thereof, unless the owner agrees to pay for all water furnished to said premises. Section 15-7-11 then provides that where an owner of premises, who has agreed to be responsible for the payment of water furnished to his property, "or the tenant or occupant," fails to pay for water furnished to "such owner, tenant or occupant," the city may cause the water to be shut off and will not be required to turn it on again until the bills are paid. But suppose the city furnishes water to a tenant or occupant of premises without first requiring the owner to agree to be held responsible for the payment of the water bills. May the city then cause the water to be shut off from the premises for failure to pay the charges and refuse to turn the water back on until the arrears are paid (1) as against the tenant or occupant who received the water or (2) as against the owner, not the occupant, of the premises who has not agreed to be responsible for the payment of the water bills? As against the tenant, the answer is clearly yes. The statute gives the city authority to refuse to supply further water to anyone who fails to pay for past services rendered to him. The answer to proposition two is just as positive that the city cannot

require an owner who has not agreed to stand responsible for water furnished premises of which he is the owner to pay for water furnished to some occupant of the premises by refusing to supply said premises with water until said arrears are paid. Section 15-7-11 authorizes the city to turn the water off from premises where the owner who has either agreed to pay the water bills or has agreed to be responsible for their payment fails so to do. But where the owner has not agreed to pay the charges for water services, the city cannot compel him to pay them by refusing to supply water to the premises until he does. If this were possible, the procedure under Section 15-7-10, whereby the city may require the owner of premises to agree to be responsible for the payment of water service charges, would be entirely unnecessary. The city could go ahead and supply water to any occupant of premises and then later require the owner of the property, who had in no way agreed to be liable for payment of the water bills, to pay all arrears by refusing to supply water to the premises until he did so. The legislature did not contemplate such procedure under Section 15-7-10 and 15-7-11. Section 15-7-10 sets out a method whereby the city may require the owner of premises to render himself personally liable for the payment of water charges. Section 15-7-11 provides the means by which any owner who has rendered himself liable for the payment of water bills may be coerced to pay the same. That is by turning the water off and refusing to turn it on again until all arrears for which he is liable are paid. The procedure under Section 15-7-11 is directed against those who are personally liable for the payment of the water bills.

It follows from the above analysis that a subsequent purchaser of premises, from which the city has cut off the water supply, is under no duty to pay the arrears owed by a prior tenant or owner, or both, as a condition precedent to having the water turned on for use on his property, unless he has agreed to be liable for the payment of the same. Section 15-7-10 provides that the city may require the owner of

premises to sign an agreement to pay for future charges as a condition precedent to supplying water to his property, but there is no provision for requiring him to pay for water furnished to a prior owner or a tenant of a prior owner. Nor can the city require an owner to pay for water furnished to an occupant of the premises where the owner of the property has not agreed to be liable therefor. If the city does not take advantage of the provisions of Section 15-7-10 to require the owner, not an occupant, of premises to agree to pay for all water furnished to such premises, then it cannot invoke the procedure of Section 15-7-11 to coerce said owner to pay the delinquent water bills.

Therefore, it becomes immaterial whether the water bills involved in this litigation were incurred before or after the appellant became the owner of the premises. It is clear that at no time did the appellant agree to pay, or be liable for the payment of, the bills for water furnished to prior owners or occupants of the premises. Hence, the city cannot invoke the procedure of Section 15-7-11 as against appellant to coerce the collection of these delinquent bills.

To the extent that Section 916A, Revised Ordinances of Logan City 1927, quoted above, prohibits the turning on of water for use on premises where bills have been incurred and remain delinquent, as against an owner who was not the occupant of the premises when the water bills were incurred and who never agreed to pay or be liable for the payment of those bills, the section is invalid and contravenes the statute. Such an ordinance may be directed only against those who have made themselves personally liable for the payment of water charges by agreement or occupancy, i. e. by use.

There is no contention here that the statute (or ordinance) imposes a lien on the property for the payment of the water bills. Respondent Logan City states in its brief, "Our statute doesn't go that far." That is correct. Under Sections 15-7-10 and 15-7-11 no lien is impressed ■ on the property for the payment of the delinquent

water bills, nor is any authority given to a city to pass an ordinance impressing any such lien on property.

A further question is raised on this appeal. It goes to the problem of whether mandamus is the proper remedy. The trial court found that plaintiff had a "plain, speedy, and adequate remedy at law in this case, inasmuch as the City was ready to turn on the water at any time when said back water rentals were paid, which the plaintiff could have paid under protest and sued at law to recover the money." Appellant assigns this as error, urging that if the water charges had been paid under protest, any suit brought for the recovery of the money so paid "would be as doubtful as could be imagined, and, if recovery were had, would not afford appellant the specific relief to which it is entitled."

While it would have been possible for appellant to have paid the delinquent water bills under protest and then sued to recover them on the ground that the ordinance under which they were paid by appellant was invalid, yet appellant should not be required to do this in order to obtain his rights. Mandamus has long been held the proper remedy to compel a public service corporation to supply an applicant with electricity, gas, or water where the reasonable rules of the corporation have been complied with. *American Water Works Co.* v. *State*, 46 Neb. 194, 64 N. W. 711, 30 L. R. A. 447, 50 Am. St. Rep. 610; *Poole* v. *Paris Mountain Water Co.*, 81 S. C. 438, 62 S. E. 874, 128 Am. St. Rep. 923; *Texas Pipe Line Co.* v. *Burton Drilling Co.*, Tex. Civ. App., 54 S. W. 2d 190; *Florida Power & Light Co.* v. *State*, 107 Fla. 317, 144 So. 657; *Horton* v. *Interstate Telephone & Telegraph Company*, 202 N. C. 610, 163 S. E. 694 (annotated in 83 A. L. R. 941); 18 R. C. L. 163. In *Florida Power & Light Co.* v. *State,* supra, it was held:

"It is the general rule in this state as well as most, if not all, of the others, that a corporation which occupies streets and highways, with its mains, pipes, or wires, and is engaged in the business of furnishing gas or electricity for light, heat, fuel, or power, is under a legal duty to supply the same to any person who applies therefor and complies

with its reasonable regulations, and, if it wrongfully refuses to do so, mandamus will lie." (Citing numerous authorities).

For the purposes of this action, we see no distinction between a public service corporation and a municipality itself. Where a municipality is engaged in supplying water to its inhabitants, it acts in its business or proprietary, rather than its governmental, capacity. *Home Owner's Loan Corporation of Washington, D. C.* v. *Mayor and City Council of Baltimore, Md.,* 3 A. 2d 747. And it has been held that mandamus would lie to compel a city, engaged in supplying water to its inhabitants, to furnish water to an applicant. *City of Camilla* v. *Norris,* 134 Ga. 351, 67 S. E. 940; *Orcutt* v. *Pasadena Land & Water Co.,* 152 Cal. 599, 93 P. 497. In the former case the Supreme Court of Georgia stated in the syllabus:

"A resident filed a petition for mandamus to compel the municipal authorities to supply water at her residence. It was alleged that the municipality had established a water system, with which the applicant's residence was connected, and was serving the public generally, but without cause had stopped applicant's supply of water and refused to serve her, although she was due nothing for water rent, and tender of payment in advance was made for the service desired. Held, that the petition was not subject to dismissal on the ground that the plaintiff had a specific legal remedy."

In the very recent case of *Home Owners' Loan Corporation* v. *Mayor and City Council of Baltimore,* supra, the Court of Appeals of Maryland had before it the same situation as exists in the present case. Mandamus was brought by the Home Owners' Loan Corporation to compel the City of Baltimore to supply water to certain premises owned by the plaintiff. The lower court dismissed the petition, and an appeal was taken. On appeal the judgment of the lower court was reversed, the Court of Appeals holding that "if the purpose and intent" of the municipal water company's rules "was to authorize the corporation to discontinue its service to property because the owner thereof failed or re-

fused to pay the water rent due for service to a former owner, the rule was unreasonable and void. *Title Guarantee & Trust Co.* v. *457 Schenectady Avenue,* 260 N. Y. 119, 183 N. E. 198, 86 A. L. R. 347, 352; 28 A. L. R. 478; *Waldron* v. *International Water Co.,* 95 Vt. 135, 112 A. 219, 13 A. L. R. 346; *Etheredge* v. *Norfolk,* 148 Va. 795, 139 S. E. 508, 55 A. L. R. 789; 27 R. C. L. 1455; McQuillen Mun. Corp. sec. 1824; Dillon, Mun. Corp. sec. 1321." [3 A. 2d 751.]

The theory on which mandamus will lie appears to be that an applicant is not under the duty of complying with unreasonable rules or unlawful regulations in order to obtain the service of a public service corporation (or a municipality acting in the same capacity). The fact that he may submit to such unlawful regulation by paying the assessed charges under protest and suing to recover the money thus paid on the grounds that the regulation was unlawful, does not establish that he has a plain, speedy, and adequate remedy at law. Mandamus was, therefore, proper in this case.

The judgment of the trial court is reversed, and the cause remanded with instructions to enter judgment in accordance with the views herein expressed. Costs to appellant.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.