[No. 27371.  Department One.  December 24, 1938.]

J. W. ELLIOTT et al., Appellants, v. THE CITY OF LEAVENWORTH, Respondent.[1]

[1]Reported in 85 P. (2d) 1053.

*J. T. Lindley,* for appellants.

*Herman Howe,* for respondent.

HOLCOMB, J.—This is an appeal from a judgment adjudging ordinance No. 296 of the city of Leavenworth to be valid and dismissing the complaint with prejudice.

The undisputed facts are as follows: Leavenworth, a city of the third class, is situated adjacent to the Wenatchee river, and for many years raw and untreated sewage of the city has been discharged into that river by several public and private sewers, thereby endangering the public health. September 13, 1938, the city council of Leavenworth passed ordinance No. 296, providing for additions and betterments to the water system of the city and the construction of a sewage disposal plant.

At present, only a small portion of Leavenworth is served by sewers, and the plan adopted in the ordinance includes the construction of extensive trunk line sewers and laterals, which will constitute a complete and comprehensive sewage disposal system for the entire city.

The ordinance is entitled:

"AN ORDINANCE relating to and adopting a system or plan for making additions and betterments to the water system of the City of Leavenworth, and for constructing a sewage disposal plant, declaring the estimated cost thereof, as near as may be, and providing for the issuance of not to exceed $90,000 of Water Revenue Bonds to defray a portion of the cost and expense of such additions and betterments to the water works system and of the construction of the sewage disposal plant, the balance of the cost thereof to be financed by a grant from the Federal Emergency Administration of Public Works and/or the Federal Works Progress Administration and/or the State of Washington, and providing for the creation of a special fund to pay the principal and interest of such bonds, and submitting said plan and the question of the issuance of said bonds to the qualified

voters of the City of Leavenworth for ratification or rejection at a special election to be held in said city, and providing for the calling and holding of said election."

Section 3, paragraph B, of the ordinance prescribes the various sizes of sewer pipes to be laid, and specifically designates the streets in the city on which the pipes are to be placed.

Paragraph B also provides:

"That a sewage disposal and treatment plant, consisting of storm overflow, grit chamber, racks, primary settling tank, digester tank, filter, final settling tank, sludge pumps, recirculating pumps, flow measuring devices, chlorinating equipment, sludge beds, operating house, gas burner, piping, valves and all auxiliary equipment required for a complete operating treatment plant, including such incidental repairs and construction as may be required to connect up the present sewage system with the sewage disposal plant, be constructed upon site east of Commercial Street and between 13th and 14th Streets, and that the sewage system be improved by placing and/or replacing the existing worn out sewer pipes with cement or vitrified clay sewer pipe materials in the following locations:

. . .

"Together with manholes, drain inlets, flush tanks and any and all appurtenances necessary to a complete sewage and sewage disposal system."

In order to secure the sewage plant specified in the ordinance, provision was made for the issuance of water revenue bonds in an amount not exceeding $90,000, payable solely out of a special fund, the "water revenue bond fund." The ordinance was approved and signed by the city mayor on the day the ordinance was passed by the council, and it was published in the official newspaper of the city. Pursuant to ordinance No. 296, September 30, 1938, the following proposition was submitted to the qualified voters at a special election, and was favorably voted upon:

"Shall the City of Leavenworth issue water revenue bonds in the principal sum of not to exceed $90,000 for the purpose of paying the estimated sum of approximately $78,000 of the cost of making additions and betterments to the water works system, including the construction of a sewage disposal plant, the remainder of the cost thereof to be paid by grant from the Federal Emergency Administration of Public Works and/or the Federal Works Progress Administration and/or the State of Washington as provided by Ordinance No. 296."

Appellants are residents, taxpayers, and water users of the municipal water system of Leavenworth, and they instituted this action in a representative capacity on behalf of themselves and all others similarly situated to enjoin respondents from issuing, offering for sale, or selling water revenue bonds purported to be authorized by ordinance No. 296. Appellants contend that the trunk line sewers and laterals proposed to be constructed as part of the system and plan set out in the ordinance are not part of "a sewage disposal plant," as that term is used in Rem. Rev. Stat., §§ 9488, 9489 and 9491 [P. C. §§ 1214, 1215, 1217], and that portion of the ordinance which provides the trunk line sewers and laterals shall be considered as part of, and belonging to, the water works of the city is not authorized by law, and is wholly *ultra vires* and illegal. Respondent answered and prayed that ordinance No. 296 and the system and plan set out therein and the bonds proposed to be issued be decreed to be legal and valid. The trial court entered judgment adjudicating ordinance No. 296 to be valid and dismissed the action.

Appellants assign as error the inclusion of laterals and mains of a complete sewage system within the term "sewage disposal plant," and the sustaining of the validity of ordinance No. 296.

Article XI, § 11, of the state constitution provides:

"Any county, city, town or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

Rem. Rev. Stat., § 9127 [P. C. § 797], empowers cities of the third class to pass ordinances not in conflict with the constitution and laws of this state or of the United States. It reads in part:

" . . . (d) To establish, construct and maintain drains and sewers, and shall have power to compel all property owners on streets and alleys or within two hundred feet thereof along which sewers shall have been constructed to make proper connections therewith and to use the same for proper purposes, and in case the owners of the property on such streets and alleys or within two hundred feet thereof shall fail to make such connections within the time fixed by such council, they may cause such connections to be made and to assess against the property served thereby the costs and expenses thereof; . . ."

Laws of 1931, chapter 53, p. 168, § 1, Rem. Rev. Stat., § 9488 [P. C. § 1214], provided any incorporated city or town within the state may construct, condemn and purchase, add to, maintain, conduct, and operate waterworks, and "construct and maintain systems of sewage disposal plants."

Rem. Rev. Stat., § 9488, was amended by Laws of 1933, chapter 163, p. 597, § 1, Rem. Rev. Stat. (Sup.), § 9488, the words "sewage disposal plants" were deleted from the statute as amended, and the words "systems of sewerage" were substituted therefor. The amended statute reads in part as follows:

"*Any incorporated city* or town within the state be, and *hereby is, authorized* to construct, condemn and purchase, purchase, acquire, add to, maintain, conduct and operate water-works, within or without its limits, for the purpose of furnishing such city or town and the inhabitants thereof, and any other persons, with an

ample supply of water for all uses and purposes, public and private, including water power and other power derived therefrom, with full power to regulate and control the use, distribution and price thereof; *to construct, condemn and purchase, purchase, acquire, add to, maintain and operate systems of sewerage,* and systems and plants for garbage and refuse collection and disposal, with full jurisdiction and authority to manage, regulate, operate and control the same, and to fix the price of service thereof, within and without the limits of the corporation; . . ." (Italics ours.)

Laws of 1931, chapter 53, p. 171, § 2, Rem. Rev. Stat., § 9489 [P. C. § 1215], prescribes the procedure to be followed whenever a municipality undertakes to acquire, construct, or operate public utilities designated in Rem. Rev. Stat., § 9488. It reads:

"Whenever a city council or other corporate authorities of any such city or town shall deem it advisable that the city or town of which they are officers shall purchase, acquire or construct any public utility mentioned in section 9488 hereof or make any additions and betterments thereto or extensions thereof, the common council or other corporate authorities shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, and the same shall be submitted for ratification or rejection to the qualified voters of said city at the general or special election, except in the following cases where no submission shall be necessary: . . .

"(3) When in the judgment of the city council, or other corporate authority of any such city or town, the public health is being endangered by the discharge of raw or untreated sewage into any river or stream in this state, and *the danger to the public health may be abated by the construction and maintenance of a sewage disposal plant or plants,* for which no general indebtedness shall be incurred by such city or town responsible for such contamination. . . ." (Italics ours.)

It will be noted that this procedural statute provides only for "a sewage disposal plant or plants," and not for "systems of sewerage."

Rem. Rev. Stat., § 9491 [P. C. § 1217], provides only for the financing of public utilities organized under Rem. Rev. Stat., § 9488, and provides *sewage disposal plant or plants* may be considered as a part of and belonging to the water works department of the city. It provides in part:

"Whenever the common council or corporate authorities shall deem it necessary to construct any *sewage disposal plant or plants* as provided in subdivision (3) of section 9489 of this act, such plant or plants may be considered as a part of and belonging to the water works department of such city or town, and the cost of construction and maintenance thereof may be chargeable to the water fund of such city or town, or to any other special fund which said common council, or other corporate authorities, may by ordinance designate. . . ." (Italics ours.)

The words "systems of sewerage" appearing in Rem. Rev. Stat., § 9488, as amended by Laws of 1933, chapter 163, § 1, is a comprehensive term evidencing a legislative intent to permit and to authorize incorporated cities to construct, maintain, and operate extensive sewage facilities, and was in existence when the ordinance under consideration was formulated and voted upon.

Webster's New International Dictionary (2d ed.), defines the word "system" as follows:

"An aggregation or assemblage of objects united by some form of regular interaction or interdependence; a group of diverse units so combined by nature or art as to form an integral whole, and to function, operate, or move in unison and, often, in obedience to some form of control."

There can be little doubt that the sewage plan specified in the body of the ordinance was permitted and

authorized under the law in effect at the time it was drafted and submitted to the electorate for approval or rejection, and it is clear that Rem. Rev. Stat. (Sup.), § 9488, and Rem. Rev. Stat., §§ 9489 and 9491, are *in pari materia* and the deletion of the words "sewage disposal plants" and substitution of the words "systems of sewerage" was intended to apply with equal force to Rem. Rev. Stat., §§ 9489 and 9491. *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26.

■ However, since the ordinance employs the term "sewage disposal plant" and not "systems of sewerage," it is necessary to ascertain whether those particular words, embodied in the title to the ordinance and in the proposition submitted to the voters respecting the ordinance, are broad enough to include the sewage plan adopted by § 3, paragraph B, of the ordinance.

The ordinance was published on September 13 and September 16, 1938, two weeks prior to the election, in the official newspaper of Leavenworth, so that the public was afforded an opportunity to read and to examine the entire ordinance before voting upon it.

While the language used in the title of the ordinance and in the proposition in respect to the sewerage provisions of the ordinance submitted to the voters could have been more happily chosen, we consider it sufficient, under the circumstances, to apprise the voters of the sewerage plan contemplated by the ordinance.

"If the title shows the general character of the ordinance and thus prevents its enactment being inadvisedly or fraudulently accomplished, it will be sufficient.

"It need not be in any particular form. It is sufficient 'if it contains well chosen words suggestive of the subject treated.' It need not be an index to the act, nor need it state a catalogue of all the powers intended to be bestowed. It is not required to go into

details. 'An abstract of the law is not required in the title'; nor need the title state the mode in which the subject is treated, nor the means by which the end sought by the enactment is to be reached. So it is not required that every other law repealed by implication because of repugnancy or inconsistency shall be mentioned in the title of the new law. But it must not be misleading. It should be sufficiently full and specific to lead to an inquiry into the body of the ordinance. Nothing more is required." 2 McQuillin, Municipal Corporations (2d ed.), 622, § 714.

In *White v. Turner*, 114 Wash. 405, 195 Pac. 240, 197 Pac. 609, it was urged that the title to the ordinance of the city of Everett relating to the use, protection, and preservation of public streets and highways within the city and the licensing, operation, and speed regulation of freight vehicles, was defective because the title to the ordinance did not in any way refer to the tax provided for in the ordinance. The court stated:

"We do not think there is merit in this contention because the title of the ordinance expressly provides for the licensing and operation of freight vehicles. It is the general rule that, if the title shows the general character of the ordinance and thus prevents its enactment being fraudulently accomplished, it will be held to be sufficient, and that the title is not intended to be a glossary of the contents of the act. 2 McQuillin, Municipal Corporations, p. 1484; *State ex rel. Cole v. New Whatcom*, 3 Wash. 7, 27 Pac. 1020."

The title of an ordinance is sufficient if it covers the general subject matter and invites attention to the body of the ordinance; it is not necessary that it be either a general index or that it set forth its content with great particularity. *State v. Lovelace*, 118 Wash. 50, 203 Pac. 28.

Respondent has been authorized and empowered by the legislature to undertake the public services mentioned in the ordinance, to treat the sewage system

as belonging to the water department, and the title to the ordinance and the langage used in the proposition submitting the ordinance to the voters are legally sufficient.

The judgment is affirmed.

MAIN, BLAKE, and ROBINSON, JJ., concur.

STEINERT, C. J., concurs in the result.