256 P.2d 515

## SCHMIDT v. VILLAGE OF KIMBERLY.
### No. 7983.

Supreme Court of Idaho.
April 22, 1953.

50

Benoit & Benoit, Twin Falls, for appellant.

Robert E. Smylie, Atty. Gen., Blandford & Blandford, Twin Falls, for respondent.

TAYLOR, Justice.

In the trial court the parties stipulated the facts as follows:

"Plaintiff is now and for many years has been a citizen, resident property owner and taxpayer of the village of Kimberly, Idaho. Defendant is now a village having been duly incorporated as such in 1917.

"After the 1951 Legislature of the State of Idaho enacted the Revenue Bond Act, which is Chapter 47, 1951 Session Laws, some large bond brokerage concerns refused to bid on, and some nationally recognized bond attorneys refused to approve, revenue bond issues in Idaho until the Idaho Supreme Court had passed upon the validity and constitutionality of said Revenue Bond Act.

"This is a friendly action brought under the Declaratory Judgment Act [I.C. § 10–1201 et seq.] in order to reach a final determination by the Court as quickly as possible, in order to permit remedial legislation by the 1953 legislature, if necessary. The questions involved herein are of general interest to all citizens and municipalities in the State of Idaho.

"On November 13, 1951, the village of Kimberly, Idaho, passed Ordinance No. 134 ordering the acquisition of a sewage collection system and sewage treatment plant for Kimberly, and the extension of the municipal water system and water treatment plant, and calling for an election for the purpose of submitting to the qualified electors of said village the following proposition:

"'Shall the village of Kimberly, Idaho, issue and sell its revenue bonds to the amount of $130,000 for the purpose of providing funds with which to acquire through purchase and construction a sewage collection system and a sewage treatment plant and to extend the municipal water system and water treatment plant, the whole to constitute and be operated as a single public utility, as more fully provided in Ordinance No. 134, adopted on November 13, 1951.'

"Ordinance No. 134 was published in the Kimberly Advertiser on November 16, 1951, and is attached to the complaint herein as Exhibit 'A'.

"After Ordinance No. 134 became a law, the village of Kimberly, Idaho, posted notice of an election for the purpose mentioned in said ordinance on November 17, 1951, and published such notice on November 16, 23 and 30, and December 7, 1951. Said notice was posted 24 days before the election and the first publication thereof was 25 days before the election; that such posting and publication was done as required by Section 50-1702 of Idaho Code, which is part of the law relating to municipal elections, and as required by section 9 of said Revenue Bond Act. Said notice is attached to plaintiff's complaint as Exhibit 'B'.

"The election was held on December 11, 1951. The polls opened at 9:00 o'clock, A.M., and closed at 7:00 o'clock P.M. Persons who voted at said election were qualified electors, and of those voters, some were taxpayers and some were not, some owned real property and some did not, and some were wives of taxpayers and some were husbands of taxpayers. The proposition submitted to the voters carried by more than a two-thirds majority.

"In 1950 the village of Kimberly issued general obligation bonds to the amount of $56,000.00 for the purpose of enlarging, extending and improving its water distribution system. Bonds were duly sold and the purpose accomplished. A levy was made in 1951 and will be made each year thereafter for a period of twenty years to pay the principal and interest of said general obligation bonds.

"The village does not have a sewerage system. Sewage is handled by

cesspools and sewer wells. The construction of the proposed sewage works is necessary to the preservation of the health of the citizens of the village of Kimberly and of the surrounding suburban area. The village intends to use a portion of said revenue bond funds to purchase property outside the city upon which to construct the sewage treatment and disposal plant.

"On June 10, 1952, the village of Kimberly passed Ordinance No. 139, Exhibit 'C', directing the issuance of $130,000 water and sewer bonds to pay the cost of extending the water system and water treatment plant and for a sewage collection system and sewage treatment plant. Said ordinance also fixed the form of the bonds and contained the usual provisions found in such ordinances.

"The village of Kimberly intends to pay the Revenue Bond Fund for all water service supplied the village by said water system, water treatment plant, sewage collection system and sewage treatment plant, including an annual rental for use of water from fire hydrants connected with said system. The amount of such rental will be not less than $10.00 for each fire hydrant and will be paid quarterly from general tax funds. Such payments are provided for in said Ordinance No. 139 in Section 10.

"Upon completion of construction as aforesaid, the village of Kimberly intends to compel all places of business and residence within the village which are within 150 feet of the sewer line to connect thereto and to abandon all private means of sewage disposal.

"After construction of the sewage collection system, sewage treatment and disposal plant, and extension of the municipal water system and water treatment plant, the whole project will then be operated as a single public utility. The charges for sewer services rendered and water supplied in connection with the water and sewerage system will be billed as a unit. Collection of such charges will be made from all persons using the system whether they be taxpayers, property owners, lessees, renters, or otherwise. If any of such persons fails to pay his bill, the village will shut off his water and he will thereafter be denied water and sewer service. The Revenue bond Act of Idaho provides at section 4, subdivision (e), for such denial of service. The village of Kimberly intends to collect from such persons the sewer and water charges set forth in said Ordinance No. 139, and if any person fails to pay the same and his water is shut off, as aforesaid, a penalty will be levied against him and, as above stated, he will be denied both water and sewer services.

"In the event of default in the payment of principal of or interest on said bonds for a period of 30 days, or in the event of failure of said Village officials, agents or employees to comply with any essential provisions of said Ordinance No. 139, then a receiver will be appointed for the system, which receiver will be authorized to enter and take possession of the system, operate and maintain the same, prescribe rates, fees and charges, and collect, receive and apply revenues arising therefrom in the same manner as the municipality might do."

As to nine of the twelve propositions passed upon by the court, the judgment was in favor of the defendant, upholding the validity of the statute and ordinances in respect thereto. From these rulings the plaintiff appeals. As to the remaining three propositions the judgment was favorable to the plaintiff, holding invalid the provisions of Ordinance No. 139 in respect thereto. From these three rulings the defendant cross-appeals.

Pertinent constitutional provisions common to various of the issues are as follows:

"No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principle thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state." Art. 8, § 3, Idaho Constitution.

This section of the constitution was amended in 1950 by the addition thereto of the following:

"and provided further that any city or village may own, purchase, construct, extend, equip, within and without the corporate limits of such city or village, water systems and sewage collection systems, and water treatment plants and sewage treatment plants, and off street parking facilities, and, for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two-thirds of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of

which to be paid solely from revenue derived from rates and charges for the use. of, and the. service rendered by, such systems, plants, and facilities as may be prescribed by law." 1951 S.L. p. 656.

■ The judgment of the trial court on the first issue presented is as follows:

"* * * the Village of Kimberly, Idaho, may combine its water system and its sewer system and issue water and sewer revenue bonds with a pledge of the net revenue of both as the sole security thereof, even though the water system now exists and the sewer system is non-existent since the water system will be extended when the sewer system is constructed, and the authority therein granted is not in violation of any of the provisions of the Constitution of the State of Idaho."

This ruling is correct. § 50–2814 I.C. of the Revenue Bond Act defines "works" as follows:

"(a) The term 'works' shall include water system, sewage collection system, water treatment plant, sewage treatment plant, and off-street parking facilities, or either of them, as herein defined."

Then follows with definitions of "water system", "sewage collection system", "water treatment plant", and "sewage treatment plant", in that order, which is the order appearing in the amendment to sec-

tion 3, Article 8, of the constitution. From these provisions it appears that it was not the intention of the people in amending the constitution, or of the legislature in its enabling act, to provide for a "water system" or "water treatment plant" as a necessarily separate unit or units to be established and maintained separately and apart from either or both of the "sewage collection system" or "sewage treatment plant", and it is quite apparent from the definition of the term "works" that it was the legislative intent to enable a city or village to establish and maintain any or all of such systems or plants in any combination which would best serve the purposes of the municipality. Such construction is in entire harmony with the policy of the law as declared by the legislature in section 2 of the Act, § 50–2813, I.C., as follows:

"It is hereby declared to be the policy of this state that any municipality acquiring, constructing, reconstructing, improving, bettering or extending any works pursuant to this act shall manage such works in the most efficient manner consistent with sound economy and public advantage to the end that the services of such works shall be furnished at the lowest possible cost."

Appellant cites Jones v. Stearns, 275 Ky. 729, 122 S.W.2d 766, and urges specifically that the village is not authorized to pledge the revenues of its existing water

system to the payment of the bonds to be issued for the construction of a sewage system. It appears from a reading of Jones v. Stearns that while the bonds involved were "revenue bonds", they were to be secured by a mortgage or lien upon the existing water system of the city. That is not the situation in our case. Here, the sole security for the payment of the bonds is to be the net revenue of the combined water and sewer system. No incumbrance is placed upon the system itself or any part of it. Moreover, prior acts and statutes authorizing municipal utilities through revenue bonds or special funds were expressly repealed by the Revenue Bond Act of 1951. The new act provides that any municipality issuing bonds under it, has the right to appropriate and apply the revenue of such works for the following purposes:

" * * * (c) to pay and discharge notes, bonds or other obligations and interest thereon, *not issued under this act* for the payment of which the revenue of such works may have been pledged, charged or encumbered, * * *." Sec. 7, Chap. 47, 1951 S.L., Sec. 50-2818, I.C. (Emphasis supplied.)

It is apparent that the legislature intended the 1951 Act to apply to existing systems.

Since the existing water system of the village was acquired (as enlarged) by means of "general obligation bonds", payable from the proceeds of annual tax levies over a period of twenty years, the revenue therefrom is unpledged, and therefore may be applied by the village to any purpose authorized by the Revenue Bond Act, specifically to the redemption of the bond issue herein proposed.

In Guthrie v. City of Mesa, 47 Ariz. 336, 56 P.2d 655, 658, the Arizona court in passing upon this question said:

"We are unable, however, to see any distinction in principle between the application of the revenues derived from an old utility to the creation of a special fund and using those from a new utility for the same purpose so long as the income from the old or existing utility is free and unpledged to the payment of any other municipal obligation. The mere fact that the municipality has been using such funds to help discharge its general expenses does not of itself mean that it must continue to do so and may not apply them to some other useful municipal purpose if the best interest of the city demands it."

The following decisions also support this conclusion: State v. City of Fort Myers, 156 Fla. 681, 24 So.2d 50; Department of Water and Power v. Vroman, 218 Cal. 206, 22 P.2d 698; Farmers' State Bank v. City of Conrad, 100 Mont. 415, 47 P.2d 853; Elliott v. City of Leavenworth, 197 Wash. 427, 85 P.2d 1053; Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P.2d 877; City of Glendale v. Chapman, 108 Cal.App.2d 74, 238 P.2d 162. That a municipality may

combine its utilities see: City of Harrison v. Braswell, 209 Ark. 1094, 194 S.W.2d 12, 165 A.L.R. 845; Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 96 A.L.R. 1381; Michelson v. City of Grand Island, 154 Neb. 654, 48 N.W.2d 769, 26 A.L.R.2d 1346.

The ruling of the trial court on the second proposition is:

"That under the authority granted in that portion of Chapter 28, Title 50, Idaho Code commonly known as the 'Revenue Bond Act', and Article 8, Section 3 of the Constitution of the State of Idaho, the Village of Kimberly, Idaho may acquire land without the Village upon which to construct sewage disposal and treatment plants."

This is also correct. The amendment to the constitution, above quoted, expressly empowers the village to acquire and own water and sewer systems and treatment plants "within and without the corporate limits". Land is, of course, an essential part of such systems and plants. Also the Act authorizes the village:

"(a) To acquire by gift, purchase or the exercise of eminent domain, to construct, reconstruct, improve, better or extend any works, within or without the municipality, or partially within or partially without the municipality, or within any part of the municipality and to acquire by gift, purchase, or the exercise of the right of eminent domain,

lands or rights in lands or water rights in connection therewith, including easements, rights of way, contract rights, leases, franchises, approaches, dams, reservoirs." Sec. 4, par. (a) of the Revenue Bond Act, § 50–2815(a), I.C.

The power claimed is clearly given.

The ruling of the court on the third proposition is as follows:

"That the provisions of Ordinance No. 139 of the Village of Kimberly, Idaho, authorizing the issuance in the future of revenue bonds to enjoy complete parity of lien with bonds of the first issue, is invalid as in direct conflict with the provisions of that portion of Chapter 28, Title 50, Idaho Code commonly known as the 'Revenue Bond Act'."

We are not in accord with this part of the judgment. Section 13 of the Act, § 50–2824, I.C., provides:

"All bonds of the same issue shall, subject to the prior and superior rights of outstanding bonds, claims or obligations, have a prior and paramount lien on the revenue of the works for which said bonds have been issued over and ahead of all bonds of any issue payable from said revenue which may be subsequently issued and over and ahead of any claims or obligations against said revenue subsequently incurred. All bonds of the same issue shall be equally and ratably secured without priority

by reason of number, date of bonds, of sale, or execution or of delivery, by a lien on said revenue in accordance with the provisions of this act and the ordinance authorizing said bonds."

Section 12 of Ordinance No. 139 in part provides as follows:

"That the bonds herein authorized shall enjoy complete parity of lien on the revenues of the system despite the fact that any of said bonds may be delivered at an earlier date than any other of said bonds. The Village of Kimberly expressly covenants and agrees that it will issue no other bonds or obligations of any kind or nature payable from or enjoying a lien on the revenues of the system prior to or on a parity with the bonds herein authorized."

To this extent the ordinance is in complete harmony with the statute. The evident purpose of this section is to place all bonds of a given issue on a parity in respect to the rights of the holders, in the fund provided for their payment, and to give them a prior claim as against the holders of bonds of a subsequent issue. Section 12 of the ordinance contains the following, referring to and modifying the first paragraph thereof as hereinabove quoted, to-wit:

"The provisions of the first paragraph of this section are subject to the further exception that additional obligations may hereafter be issued payable from the revenues of the system on a parity with the bonds herein authorized, but only if all of the following conditions are met:

"(a) The net revenues of the system must in each of the two completed fiscal years immediately preceding the issuance of the additional bonds have been equal to one and one-half (1½) times the highest combined interest and principal requirements for any future twelve months' period on all bonds then outstanding and the obligations so to be issued. Net revenues for the purpose of this paragraph shall be understood to mean the gross revenues derived from the operation of the system remaining after there have been first paid therefrom all expenses of operating and maintaining the system.

"(b) The payments required to be made into the various funds provided in Section 7 hereof must be current.

"(c) The additional bonds must be payable as to principal on July 1 of each year in which principal falls due and payable as to interest on January 1 and July 1 of each year.

"(d) The proceeds of the additional bonds must be used solely for the making of improvements and extensions to the system."

It is axiomatic that the provisions of the statute and the ordinance become a part of the contract between the village and the bondholders. It is also fundamental that

a party may waive a provision in a contract made exclusively for his benefit. Here it appears that the priority given to the holders of bonds of one issue, as against the holders of a subsequent issue, is a matter of indifference to the village, and is made solely for the benefit of the bondholders of the prior issue. The last quoted provision from Section 12 of the ordinance, would also become a part of the contract between the bondholders and the village and is an apparent offer on the part of the prospective bondholders to waive the priority given them by the statute, in case the rigid and restrictive conditions therein set forth are complied with. Such a waiver would be an advantage to the village in the event it became necessary or advisable to improve or extend its system in the future, in that the bonds to be issued for that purpose would thereby be more attractive to prospective buyers. We see no reason to hold the provision invalid because of the statutory priority.

The judgment of the court in the fourth proposition presented is that the provisions of the ordinance and the Revenue Bond Act,

"authorizing the appointment of a receiver for the system on default in payment of principal or interest of the revenue bonds or on failure of village officials to comply with any of the essential provisions of said ordinance, are not unconstitutional as depriving a municipality of its property without due process of law, empowering a court to take control of property from the municipality, or permitting an unauthorized delegation of power by a municipality over its affairs and property."

This ruling is correct. Section 11 of the Act, § 50–2822, I.C., provides that the ordinance authorizing the bond issue shall contain covenants as to " * * * (h) The terms and conditions upon which the holders of said bonds or holders of a specified percentage or amount thereof, or any trustee therefor, shall be entitled to the appointment of a receiver, which receiver may enter and take possession of such works, operate and maintain the same, prescribe rates, fees, tolls or charges, and collect, receive and apply all revenue thereafter arising therefrom in the same manner as the municipality itself might do." This is legislative authority for the appointment of a receiver with power to do the things therein enumerated, in the discretion of the court, should either of the contingencies mentioned arise. The court would be authorized, through its receiver, to take temporary possession of the utility and to operate it in compliance with the statute and the ordinance, and in so doing to compel performance of the contract between the village and the bondholders, and when that is accomplished, to restore the property to the village. Under no circumstances can the property itself be taken away from the village. The application to the court for the appointment of a receiver, with the opportunity which our procedural law affords to

the village to be heard in opposition thereto, to question the sufficiency of the showing, and to urge the adequacy of mandamus or any other remedy in preference to receivership, the discretion of the court in the premises being undiminished, all accords with due process of law. The operation by a municipality of a public utility is a proprietary, not a governmental, function. Guthrie v. City of Mesa, 47 Ariz. 336, 56 P.2d 655; Home Owners' Loan Corporation v. Logan City, 97 Utah 235, 92 P.2d 346; Karel v. City of Eldorado, D.C., 32 F.2d 795; 37 Am.Jur., Municipal Corporations, §§ 114, 115, 117, 118; 62 C.J.S., Municipal Corporations, § 110–c. Therefore, there is no unconstitutional delegation of municipal power involved. Dreyfus v. City of Socorro, 26 N.M. 127, 189 P. 878; Warrenville State Bank v. Farmington Tp., D.C.Mich., 81 F. Supp. 101; Parr v. Ladd, 323 Mich. 592, 36 N.W.2d 157, 8 A.L.R.2d 357; Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 96 A.L.R. 1381.

█ The trial court's decision on the fifth proposition is as follows:

"That the provisions of Article 8, Section 3 of the Constitution of the State of Idaho requiring the principal and interest of municipal indebtedness to be paid within twenty years applies to general obligation bonds payable from taxes and not to revenue bonds payable from revenues, as provided in Ordinance No. 139 of the Village of Kimberly, Idaho."

Prior to the 1950 amendment to Section 3, Article 8 of the Constitution, supra, this court had held, in a series of decisions, that bonds payable out of revenues of municipal utilities created an "indebtedness, or liability," within the provisions of that section and that all of the original limitations imposed thereby must be complied with. Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643, 43 L.R.A.,N.S., 1095; Miller v. City of Buhl, 48 Idaho 668, 284 P. 843, 72 A.L.R. 682; Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475; Straughan v. City of Coeur d'Alene, 53 Idaho 494, 24 P.2d 321. Cf. Annotations, 72 A.L.R. 687, 96 A.L.R. 1385, 146 A.L.R. 328. The trend toward the use of revenue bonds to enable municipalities to acquire needed utilities has continued and in order to enable the municipalities of this state to employ that method of financing such utilities, and to remove the restrictions of the original section 3 from such financing operations, the 1950 amendment was proposed and adopted. So that. henceforth, so long as the conditions contained in the amendment are observed, the municipalities of this state may issue revenue bonds for the purposes therein enumerated "without regard to any limitation" contained in the original section. It follows that the district court was correct in holding that the original provision requiring payment within twenty years does not apply to revenue bonds issued pursuant to the authority of the amendment, there being no such limitation in the amendment.

■ On the sixth issue presented, the trial court correctly held that the provision of ordinance No. 139, which provides that the village is to pay from its general fund for water and services rendered to it by the water and sewer system, and that the provision of the revenue Bond Act, authorizing payment by the village from its general fund for such water and services, does not create a debt of the municipality, contrary to the provisions of Section 3, Article 8, or any other provision of the constitution. Section 3, as originally written, expressly excluded from its operation the "ordinary and necessary expenses authorized by the general laws of the state." The ordinance does not bind the village to use water from any fire hydrants nor from any particular number of fire hydrants. Its obligation in this respect is entirely optional and the minimum rate provided for each hydrant is conceded to be reasonable. With respect to other water used by the village, the ordinance provides only that it shall not be free. The rate is to be determined as are the rates for other users, which the statute requires to be reasonable. There being no undertaking by the village to use any particular amount of water over any stated period of time, the obligation which it assumes by this ordinance is only to pay a reasonable rate for service, currently as received, and is therefore an undertaking to pay "ordinary and necessary expense, authorized by the general laws of the state". Thomas v. Glindeman, 33 Idaho 394, 195 P. 92, 93;

Dexter Horton Trust & Savings Bank v. Clearwater County, D.C.Idaho, 235 F. 743; Simpson v. City of Highwood, 372 Ill. 212, 23 N.E.2d 62, 124 A.L.R. 1459; Huntington Water Corp. v. City of Huntington, 115 W.Va. 531, 177 S.E. 290; 64 C.J.S., Municipal Corporations, § 1852(b); Fjeldsted v. Ogden City, 83 Utah 278, 28 P.2d 144; Wadsworth v. Santaquin City, 83 Utah 321, 28 P.2d 161.

■ In its judgment on the seventh issue presented, the court held that the provision of Ordinance No. 139, requiring the owner of land in the village within 150 feet of a sewer line to connect buildings thereon with the sewer system, and cease the use of any other method of sewage disposal, is not unreasonable nor in violation of any provision of the constitution. This holding is correct. The power of a municipality to compel connections with the sewer is generally recognized. Fristoe v. City of Crowley, 142 La. 393, 76 So. 812, L.R.A.1918C, 254; Commonwealth v. Roberts, 155 Mass. 281, 29 N.E. 522, 16 L.R.A. 400; Harrington v. Board of Aldermen of City of Providence, 20 R.I. 233, 38 A. 1, 38 L.R.A. 305; Gault v. City of Fort Collins, 57 Colo. 324, 142 P. 171, Ann.Cas.1916B, 718; District of Columbia v. Brooke, 214 U.S. 138, 148, 29 S. Ct. 560, 53 L.Ed. 941; Hutchinson v. City of Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520; Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761; 64 C.J.S., Municipal Corporations, § 1805(b).

The ordinance, however, provides that in addition to the owner, the village will require the "tenant or occupant" of any such property so located to connect any building thereon with the sewer and to cease the use of other means of disposal. This provision, as applied to a tenant or occupant, the trial court, in paragraph 8 of its judgment, held invalid and in contravention of the constitution as unreasonable, and a deprivation of property without due process of law.

It is admitted that a municipality may make and enforce all reasonable rules and regulations essential and appropriate to the preservation of public health, as a valid exercise of its police power. In this state that power is given to the municipalities by the constitution itself. Art. 12, § 2, Idaho Constitution. Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695. No more appropriate and potent method of promoting public health could be provided by a municipality than the establishment of an adequate sewage disposal system and requiring the discontinuance of previous unsanitary methods. The municipality, in order to effectively exercise its police power for the protection of the public health, must be clothed with authority to compel the widest use of the sanitary sewage disposal system that circumstances will reasonably permit. The power of the municipality in this respect being recognized, the validity of the particular requirement depends upon its reasonableness as applied to a particular individual or class.

The ordinance here in question does not provide any method or procedure to compel owners or occupants to connect with the sewer. It merely contains a covenant or promise, by the village, to the prospective bondholders, that it will require that such connections be made. Inferentially, it would seem, this covenant contemplates that the village will by subsequent ordinance establish appropriate regulations as to time, materials, and manner of making connections and the procedure for enforcing such regulations. Various municipalities in other jurisdictions have adopted different methods of requiring connections, and means of collecting the cost thereof, which have been upheld by the courts. Fristoe v. City of Crowley, 142 La. 393, 76 So. 812, L.R.A.1918C, 254; Town of Leeds v. Cason, 217 Ala. 444, 116 So. 519; City of Leeds v. Avram, 244 Ala. 427, 14 So.2d 728; State v. City of Miami, 157 Fla. 726, 27 So. 2d 118; Dodd v. City of Atlanta, 154 Ga. 33, 113 S.E. 166, 28 A.L.R. 465; State ex rel. Scotillo v. Water Supply Company of Albuquerque, 19 N.M. 27, 140 P. 1056, L.R.A.1915A, 242; District of Columbia v. Brooke, 214 U.S. 138, 148, 29 S.Ct. 560, 53 L.Ed. 941; Hutchinson v. City of Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520; 64 C.J.S., Municipal Corporations, § 1805 b and d. The question of whether or not any constitutional rights of a tenant or oc-

cupant may be violated by the enforcement of any particular regulation, or whether when applied to a tenant or occupant, any particular requirement is unreasonable and capricious, can be determined only in an action or proceeding arising out of an attempt on the part of the village to enforce the regulation. It cannot be determined upon the ordinance before us, containing as it does only an agreement on the part of the village to require that connections be made. This mere promise of future action does not appear to violate any constitutional rights, and hence does not affect the validity of the present ordinance. In other words, the issue appears to be prematurely presented in the present proceedings.

 There is no inconsistency between the holding herein that in the operation of a public utility the village exercises a proprietary function, and the holding that in requiring connections to be made with the sewage system the village is exercising its police power, which is a governmental function. The fact that an ordinance, providing for the establishment and operation of a municipal water and sewage system, may also contain regulations within the police power, is not conflicting, inconsistent, or an improper commingling of the two recognized functions of a municipality. The one is regarded as complimentary of the other. If the water and sewage system were privately owned and operated, unquestionably the municipality could by ordinance regulate the operation in the interests of public

health, and, in so doing, require residents to connect with and use the system.

 On the ninth proposition involved, the trial court held that the provisions of the ordinance that service will be discontinued to any user who fails to pay water and sewer charges, and the provision of the Revenue Bond Act granting authority to municipalities to so provide, are not in violation of any provision of our constitution. This holding is correct. The regulation is reasonable and neither infringes or denies any right protected by the constitution. Such a provision is universally upheld. Hatch v. Consumers Co., Ltd., 17 Idaho 204, 104 P. 670, 40 L.R.A.,N.S., 263, affirmed 224 U.S. 148, 32 S.Ct. 465, 56 L.Ed. 703; Gatton v. City of Mansfield, 67 Ohio App. 210, 36 N.E.2d 306; Annotation 28 A.L.R. 472.

 The tenth issue presented is the provision of the ordinance to the effect that the village will make a disconnection charge of $1 to one whose service is disconnected for default in payment, and an additional charge of $1.00 for a reconnection. This provision the trial court held invalid. This ruling is erroneous. No contention is made by the plaintiff that the charges are unreasonable. Section 4, paragraph (e) of the Revenue Bond Act, § 50–2815(e), I.C., provides that the municipality shall have power:

"(e) To prescribe and collect rates, fees, tolls, or charges, including the levy or assessments of such rates, fees,

tolls, or charges against governmental units, departments or agencies, including the state of Idaho, and its subdivisions, for the services, facilities and commodities furnished by such works, and to provide methods of collections, and penalties, including denial of service for non-payment of such rates, fees, tolls, or charges."

Section 6 of the Act, § 50–2817, I.C., provides:

"The governing body of a municipality issuing bonds pursuant to this act shall prescribe and collect reasonable rates, fees, tolls or charges for the services, facilities and commodities furnished by such works, and shall revise such rates, fees, tolls or charges from time to time whenever necessary so that all such works shall be and always remain self-supporting. The rates, fees, tolls, or charges prescribed shall be such as will produce revenue at least sufficient (a) to pay when due all bonds and interest thereon for the payment of which such revenue is or shall have been pledged, charges or otherwise encumbered, including reserves therefor, and (b) to provide for all expenses of operation and maintenance of such works, including reserves therefor."

It is clear that the legislature clothed the municipality with power to make and enforce any and all reasonable regulations, rates and charges necessary to make the system self-supporting and to produce the revenue for the payment of the bonds. At the same time it has required that any such regulations and charges shall not be unreasonable, it being specifically provided in section 2, § 50–2813, I.C., that the services are to be furnished at the lowest possible cost and that the municipality shall not operate the works primarily as a source of revenue. It appearing that the specific charges here considered are calculated to cover only the cost of the disconnections and reconnections, the provision appears to be valid. Sei v. Water Supply Co. of Albuquerque, 19 N.M. 70, 140 P. 1067; Schultz v. Town of Lakeport, 5 Cal.2d 377, 54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168; Dodd v. City of Atlanta, 154 Ga. 33, 113 S.E. 166, 28 A.L.R. 465, annotation page 495, et seq.

The decision of the court on the eleventh issue raised is as follows:

"That the revenue bond election held by the Village of Kimberly, Idaho, on December 11, 1951, which election was conducted pursuant to the laws of the State of Idaho governing municipal elections generally regarding the giving of notice of election and qualification of voters, was a valid election in all respects, since revenue bond elections are controlled by the laws of the State of Idaho governing municipal elections generally and not by the laws of the State of Idaho relating to general obligation bond elections; that the provi-

sions of Section 34–1002, Idaho Code, calling for the opening of polls at 8:00 A.M. are not applicable to municipal revenue bond elections."

We are in accord with this ruling. The charges made for water and sewer service are not taxes. City of Harrison v. Braswell, 209 Ark. 1094, 194 S.W.2d 12, 165 A. L.R. 845; State v. City of Miami, 157 Fla. 726, 27 So.2d 118; Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P.2d 877; 64 C.J.S., Municipal Corporations, § 1805d. (1). These charges are imposed upon, and collected from, all of the residents and users in the village, regardless of whether or not they are taxpayers. By the 1950 amendment to the constitution, by the Revenue Bond Act, by the provision of the ordinance and the bonds themselves, neither the village nor its taxpayers are obligated for the payment of the bonds. Hence the provisions of our statutes, governing elections on the question of issuance of general obligation bonds, have no application. Section 9 of the Revenue Bond Act, § 50–2820, I.C., specifically provides that "Such election shall be conducted in other particulars as are other municipal elections." This brings into operation in the conduct of a municipal revenue bond election the provisions of Chapter 17, Title 50, I.C. as to particulars not covered by the Revenue Bond Act itself.

We find no conflict between the Revenue Bond Act and any provision of the State Constitution.

The judgment of the trial court as herein modified is affirmed.

Neither party having entirely prevailed, no costs are allowed.

PORTER, C. J., and GIVENS, THOMAS, and KEETON, JJ., concur.