712 P.2d 657

Peter T. LINDSTROM and Kristeen L. Lindstrom, husband and wife, Plaintiffs - Counterdefendants - Appellants - Cross Respondents,

v.

DISTRICT BOARD OF HEALTH PANHANDLE DISTRICT I, a public health district, Defendant-Counterclaimant-Respondent-Cross Appellant.

No. 15340.

Court of Appeals of Idaho.

Oct. 25, 1985.

James H. Paulsen, Sandpoint, for plaintiffs-counterdefendants-appellants-cross respondents.

Edward J. Anson, Wallace, for defendant-counterclaimant-respondent-cross appellant.

SWANSTROM, Judge.

Peter and Kristeen Lindstrom applied to the District Board of Health, Panhandle District I (the Board), for a permit to replace their damaged sewage disposal system with another filtration system on their property. Relying upon state regulations the Board denied the permit, ruling that the Lindstroms could contract to connect their sewer to an adjacent privately owned system which discharged its effluent into the municipally owned system. The Lindstroms filed a complaint in the district court asking that the Board's regulation be declared unconstitutional on its face. Alternatively, the Lindstroms sought a writ of mandamus commanding the Board to issue a permit to the Lindstroms and declaring that the Board's regulations involving the issuance of permits to be without force and effect as applied to the Lindstroms. The district court, finding the relevant regulation to be constitutional, denied the Lindstroms' petition for writ of mandamus and enjoined the Lindstroms from using the existing septic tank-drainfield system on their property. The Board was awarded costs but not attorney fees at trial.

On appeal to this court, the Lindstroms contend that the Board's regulation providing authority to deny their permit is uncon-

stitutional on its face and unconstitutional as applied to them. The Lindstroms further assert that the state, acting through the Board, does not have the authority to compel individuals to contract with the owners of a private sewage disposal system. The Board cross appeals contending that the district court erred in denying its request for attorney fees. We affirm the district court judgment.

The relevant facts show that the Lindstroms' home, outside of the municipal boundaries of Sandpoint, Idaho, uses a septic tank-drainfield system for sewage disposal. It is undisputed that the system has failed. The Lindstroms first applied for a permit to replace their failed system with another septic tank system. That request was acted upon and denied by Robert Camp, a specialist employed by the Board. Camp denied the permit application, giving two reasons. He stated that soil conditions were not conducive to this kind of sewage treatment. Camp also determined that the Lindstroms could connect to a privately owned sewer system adjacent to their property. The Lindstroms later applied again. This time they sought permission to install a "mound" type of filtration system. This request was also denied. The Lindstroms were notified that the mound system would be acceptable only if there were no other choices available. Camp noted again that the Lindstrom sewer could be hooked into the "Westwood Community Sewer." The sewer system serving the Westwood condominiums, located across the street from the Lindstroms' property, is joined to the city of Sandpoint municipal sewer system and treatment facility. In both instances the Lindstroms did not seek a hearing before the Board following the specialist's ruling, as is permitted by I.C. § 39–417 and by § 41.1.20 of the district's published rules and regulations. Likewise, they failed to seek judicial review of the denials pursuant to I.C. §§ 39–418 and 67–5215. Instead the Lindstroms chose to file the present declaratory judgment action in district court under I.C. § 67–5207 several months after their second request for a permit was denied.

The first question we must address in this appeal is whether the district court had jurisdiction to entertain the declaratory judgment action. When either of the Lindstroms' applications for a permit was rejected, the provisions of I.C. § 39–417 came into play. Under subsection (1) of that statute the Lindstroms might, "pursuant to the provisions of chapter 52, title 67, Idaho Code [Idaho Administrative Procedure Act], and the rules and regulations promulgated thereunder by the state board of health and welfare, seek a hearing before the district board and/or such other relief or remedy as is provided or available."

Section 39–418 provides:

(1) Judicial review of a final determination of the district board may be secured by any person adversely affected thereby by filing a petition for review as prescribed by chapter 52, title 67, Idaho Code, in the district court of the county wherein he lives within thirty (30) days after receipt of notice of the district board's final determination. The petition for review shall be served upon the district health director and the director of the department of health and welfare of the state of Idaho. The director may appear in any such hearing as a matter of right. Such service shall be jurisdictional and *the provisions of this section shall be the exclusive procedure for appeal or review.*

*(2) If no appeal or review is sought within the time prescribed in (1) above, the final determination of the district board shall be conclusive as to factual matters decided therein and not subject to collateral attack in any proceedings to enforce its provisions.* [Emphasis added.]

Normally, the review contemplated in the foregoing section would be conducted under I.C. § 67–5215. In part this section provides:

(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case of an

agency other than the industrial commission or the public utilities commission is entitled to judicial review under this act. This section does not limit utilization of or the scope of judicial review available under other means of review, redress or relief provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

(b) Except when otherwise provided by law, proceedings for review are instituted by filing a petition in the district court of either the county in which the hearing was had or the county in which the final decision of the agency was made, within 30 days after the service of the final decision of the agency or, if a rehearing is requested within 30 days after the decision thereon.

. . . .

(f) The review shall be conducted by the court without a jury and shall be confined to the record.

However, I.C. § 67–5207 provides:

The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the county in which the petitioner's attorney resides, if it is alleged that the rule, or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has request-

ed the agency to pass upon the validity or applicability of the rule in question.

Where applicable, requirements of I.C. § 39–418 for timely filing and service of a petition for review are jurisdictional. Absent compliance with this section a district court has no jurisdiction to review "a final determination of the district board." [1] Here, however, no final determination of the Board was involved. As noted, I.C. § 39–417 permitted the Lindstroms to "seek a hearing before the district board and/or such other relief or remedy as is provided or available." In this instance, § 67–5207 provides the "other relief or remedy" which was pursued by the Lindstroms.[2]

■ The Board did not raise the question before the district court whether the action for declaratory relief was timely filed. The parties essentially agreed upon the facts. Evidence was adduced in the district court for determination of one disputed factual issue, and neither party has challenged any of the court's findings. Therefore we are satisfied that the district court had jurisdiction under I.C. § 39–417 to engage in the review authorized by § 67–5207.

■ We now turn to the merits of the various constitutional issues the Lindstroms have raised. When a constitutional challenge is made, every presumption is in favor of the constitutionality of the regulation, and the burden of establishing unconstitutionality rests upon the challengers. *Ford v. Bellingham-Whatcom County District Board of Health,* 16 Wash.App. 709, 558 P.2d 821 (1977); *see also Board of*

---

1. *See* I.C. § 39–418(1), I.R.C.P. 83(e), 83(s) and I.A.R. 21. Specifically, time limits for filing petitions for review under administrative procedure acts are held to be jurisdictional. *See Glenwood Cemetery v. District of Columbia Zoning Commission,* 448 A.2d 241 (D.C.App.1982); *Coates v. Maine Employment Security Commission,* 428 A.2d 423 (Me.1981); *Conoco, Inc., v. State Department of Health of the State of Oklahoma,* 651 P.2d 125 (Okla.1982); *Tarabochia v. Town of Gig Harbor,* 28 Wash.App. 119, 622 P.2d 1283 (1981); and *Stagner v. Wyoming State Tax Commission,* 642 P.2d 1296 (Wyo.1982). The parties cannot waive appellant's failure to time-

ly file an appeal. *Herrett v. Herrett,* 105 Idaho 358, 670 P.2d 63 (Ct.App.1983).

2. The remedies of § 67–5207 are not available *after* a final determination of the Board unless the provisions of I.C. § 39–418 are strictly complied with. Section 39–418 dictates the "exclusive procedure for appeal or review [of a final board decision]" unless the procedure fails to provide an adequate remedy. *Accord Conoco, Inc. v. State Dept. of Health, supra,* note 1. *Cf. District Bd. of Health v. Chancey,* 94 Idaho 944, 500 P.2d 845 (1972). The interrelationships among I.C. §§ 39–417, 39–418 and 67–5207 might benefit from legislative re-examination.

*Dentistry v. Clark,* 104 Idaho 87, 656 P.2d 148 (Ct.App.1982). The Lindstroms first contend that rule 1–3005.04(c) and (d) of the Idaho Department of Health and Welfare Rules and Regulations for Individual and Subsurface Sewage Disposal Systems is unconstitutionally vague and indefinite. Rule 1–3005.04 provides in relevant part:

A permit may be denied by the Director if in his/her judgment:

. . . .

(c) The sewerage needs of the area should and can reasonably be provided by a public or community sewerage system;

(d) Public or community sewerage services are reasonably available.

Specifically, the Lindstroms argue that the terms "area," "reasonably" and "community sewer services" as used in the rule are too uncertain to provide sufficient standards to guide Board decisions.

A law that does not reach constitutionally protected conduct [such as right of free speech or of association] and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications. *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). However, where first amendment rights are not threatened, less stringent "vagueness" tests should apply. *Id.* Here, to succeed in their *facial* void-for-vagueness challenge, the Lindstroms must show that the challenged regulations—when gauged by the less stringent test—are impermissibly vague in all of their applications. Failing that, they must show that the regulations—as applied to them—are impermissibly vague.

■ A challenged regulation will be held to violate requirements of due process only if it is found to contain terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. *Wyckoff v. Board of County Com-*

*missioners of Ada County,* 101 Idaho 12, 607 P.2d 1066 (1980). *Accord, Stastny v. Board of Trustees of Central Washington University,* 32 Wash.App. 239, 647 P.2d 496 (1982), *cert. denied,* 460 U.S. 1071, 103 S.Ct. 1528, 75 L.Ed.2d 950 (1983). The district court found that the meaning of the regulation can be reasonably discerned, stating that "[a]n individual can determine that if there is a municipal or otherwise communal-owned sewage system hook-up near his property, he may have to connect onto that system."

■ A statute employing the term "reasonably" is not unconstitutionally vague simply because it requires a trier of fact to determine what is reasonable. 16A Am.Jur.2d *Constitutional Law* § 818 (1979). The terms "community sewer services" and "area" are unidentified in the rule, however, persons of ordinary intelligence can understand the standard. An employee of the Board testified at trial that the term "community sewerage services" was defined as a group of homes served by a common service. "The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." *Allen v. Lewis-Clark State College,* 105 Idaho 447, 455, 670 P.2d 854, 862 (1983) (quoting *Horn v. Burns and Roe,* 536 F.2d 251, 254–55 (8th Cir.1976)). Further, every word in a statute or regulation is not required to be defined with absolute clarity or specificity. *State v. Direct Sellers Association,* 108 Ariz. 165, 494 P.2d 361 (1972). Applying the above principles of law to the language of the regulation, we hold that the Board's regulation can be understood and applied by an ordinary person of common intelligence. The Lindstroms have not shown that the regulation is facially unconstitutional.

■ It is next asserted that the regulation is unconstitutional *as applied* to the Lindstroms because it deprives them of property without due process of law. The standard applicable in this kind of due process case is whether the challenged law

bears a rational relationship to the promotion of the public welfare. *Heese v. A & T Trucking,* 102 Idaho 598, 635 P.2d 962 (1981); *Board of Dentistry v. Clark, supra.* Public health and sanitation are broad objects of the police power of the state and its political subdivisions. *Ford v. Bellingham-Whatcom County District Board of Health, supra.* It is contended that forcing the Lindstroms to connect to the sewer line does not bear a rational relationship to the purpose of the rule. We disagree. The Lindstroms admit that the purpose of the rule is to promote public health. It is undisputed that the Lindstroms' present disposal system has failed and presents a potential health problem from effluent flowing upon the ground. Further, an expert testified at trial that connecting to a sewer line was the most efficient and sanitary form of waste disposal in the area of the Lindstroms' home because of soil conditions. Our Supreme Court has stated that the establishment of an adequate sewage disposal system and requiring the discontinuance of previous unsanitary methods is a most "appropriate and potent method of promoting public health." *Schmidt v. Village of Kimberly,* 74 Idaho 48, 62, 256 P.2d 515, 523 (1953). Therefore, we hold that the challenged regulation, as it was interpreted and applied in this case, is rationally related to promoting public health.

■ The Lindstroms next argue that the Board, in denying their permits on the basis that they can contract with the owners of the community sewer line, is creating an unconstitutional impairment of contract. Both the United States Constitution, article 1, section 10 and the Idaho Constitution, article 1, section 16, provide that no law shall impair the obligations of contract. However, the record does not establish that the Lindstroms are presently contracting with anyone for sewage disposal purposes. The constitutional impairment of contracts clause protects only those contractual obligations already in existence at the time the disputed law is enacted. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727

(1978) ("it [the contract clause] must be understood to impose some limits upon the power of a State to abridge existing contractual relationships...."); *accord, State v. Direct Sellers Association, supra; George v. Oren Limited & Associates,* 672 P.2d 732 (Utah 1983).

■ As an extension of the argument that the rule is unconstitutional as applied to them, the Lindstroms further contend that the Board acted arbitrarily and capriciously in applying its regulations to the Lindstroms. A governmental entity cannot act arbitrarily and capriciously in enforcing its legitimate regulations. *Schmidt v. Village of Kimberly, supra.* It has been held that, in accordance with general principles of administrative law, a court in reviewing an agency's determination should consider:

> whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority.

*Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 633, 586 P.2d 1346, 1349 (1978) (quoting *Kansas State Bd. of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828, 831 (1968)).

The Lindstroms assert that they would have no voice in the rates, management and maintenance of the community sewer line system as they are not eligible for membership in the Westwood Homeowners Association, the apparent owner of the sewer line. The Lindstroms further point out that the Board, at the time it denied the Lindstroms permits, was unaware of all of the terms of the contract the Lindstroms were required to submit to before they would be allowed to connect to the sewer line. The Lindstroms further support their argument by stating that they are willing and able to construct a Wisconsin Mound System, which is a disposal system superior to their previous septic system.

This argument relies in part on the Lindstroms' assertion that the state, acting

through the Board, does not have the authority to compel them to contract with the owners of a private sewage disposal system. The Board asserts that it is not *requiring* the Lindstroms to contract with the owners of the sewer system, rather, it is only basing its denial of the permits on the existence and availability of the sewer line. We recognize that in denying the Lindstroms' permits due to the existence of the sewer line the Board is, in reality, compelling the Lindstroms to contract with the private owners of the sewer system. The Lindstroms concede that the state has a right to compel a party to contract with a publicly owned sewer system. *Schmidt v. Village of Kimberly, supra.* The pivotal difference in the present case is that the sewer line is *privately* owned. We note that our Supreme Court has stated in dicta: "If the water and sewage system were privately owned and operated, unquestionably the municipality could by ordinance regulate the operation in the interests of public health, and, in so doing, require residents to connect with and use the system." *Schmidt v. Village of Kimberly,* 74 Idaho at 63, 256 P.2d at 524. Recognizing that this statement was unnecessary to the holding in *Schmidt,* we nevertheless adopt its principle in the present case.

■ Under the broad authority of the police power, the Legislature may enact laws concerning the health, safety and welfare of the people as long as the regulations are not arbitrary or unreasonable. *Van Orden v. State Dept. of Health and Welfare,* 102 Idaho 663, 637 P.2d 1159 (1981). The State of Idaho has by statute delegated to the district boards of health the authority "[t]o do all things required for the preservation and protection of the public health and preventive health...." I.C. § 39–414(2). This includes the authority to "adopt, amend or rescind regulations, rules and standards as it deems necessary to carry out the purposes and provisions of this act." I.C. § 39–416. To protect the public health, the Board, through its regulations seeks to reduce the number of septic tank systems and to promote the use of existing sewer lines which are reasonably available.

■ The state's vast and powerful interest to promote the public health, which includes the ability to regulate the sewage disposal systems and to require individuals to connect to municipal sewer lines, has long been recognized. Further, it is undisputed that the Board has statutory authority to compel owners of sewage systems to comply with its standards and regulations for construction. I.C. § 39–118. The state's police power can compel actions and require individuals to expend funds in the interests of the public health and welfare. "The facility that at one time represented an advance over more primitive methods, can be prohibited when a safer method becomes available." *City of Nokomis v. Sullivan,* 14 Ill.2d 417, 153 N.E.2d 48, 51 (1958). A legislative body may adopt "the most conservative course which science and engineering offer" to protect the public health. *Id.* Where public health is at stake it is a proper exercise of the state's police power to deny permission to construct a private subsurface filtration system where a reasonably available sewer line exists. The Lindstroms have failed to show that they would suffer any additional burden by connecting onto the *privately* owned sewer line than the burden they would bear if required to connect to a *publicly* owned sewer line. Therefore, based upon the facts presented, we hold that the Board may deny the Lindstroms' permits on the grounds that a superior sewer collection system is reasonably available.

The Lindstroms have failed to establish that connection to the condominium sewer line is not reasonably available to them. At the time the Board made its decision to deny the Lindstroms' permit it was aware that the Lindstroms would be required to pay the cost of the initial hookup expenses to the sewer line and a monthly processing charge which would be equivalent to the fee charged by Sandpoint to its residents for sewage treatment and disposal. The monthly fee would be increased at the

same rate Sandpoint increases its usage fee. The further terms of the contact provided that Westwood, Inc. would agree to pay the Lindstroms' share of repairs for three years or until completion of Phase II of the condominiums. We find these terms to be reasonable, resulting in the sewer line hookup being reasonably available to the Lindstroms. We hold that the Board in finding that a sewer system was reasonably available to the Lindstroms, did not act capriciously or arbitrarily. Therefore, based on the record before us, we hold that the regulation as applied to the Lindstroms is not unconstitutional.

On cross appeal, the Board claims the district court erred in denying its request for attorney fees at trial. The Board bases its claim to an award of attorney fees on I.C. § 39–419(2), which provides in relevant part:

> any person ... found to be in violation of this act or the rules and regulations promulgated thereunder shall be liable for any extraordinary expense incurred by the district board of health in enforcing this act, or in removing or terminating any nuisance, source of filth, cause of sickness, or health hazard.

It is claimed that the term "extraordinary expense" as used in the statute encompasses attorney fees.

We are not persuaded by this argument. The statute applies only to those who are found to be in violation of the Public Health Act. The record does not show that the Lindstroms are in *violation* of a regulation, rather they are contesting the *validity* of such regulation. Further, the Board has not cited any authority to support its position that attorney fees incurred in defending a constitutional attack on a regulation are an extraordinary expense.

Generally, "extraordinary" commonly refers to that which exceeds the usual or normal measure or is employed for an exceptional purpose. In addition, extraordinary expenses as applied to government expenses refers to expenses incurred by the state in promoting the general welfare,

compelled by some unforeseen condition such as flood, fire or famine. 35 C.J.S. *Expenses* (1960). We hold that the term "extraordinary expense" was not intended to encompass attorney fees incurred in defending an attack on the validity of the Public Health District's regulations at trial or on appeal. Neither are we persuaded that attorney fees should have been awarded under I.C. § 12–121.

The judgment of the district court is affirmed. Costs to respondent, District Board of Health. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.